

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
(NORTHERN DIVISION)**

**CHAKAKHAN R. DAVIS**                                          **PLAINTIFF (S)**

**Vs.**                                    **CIVIL ACTION NO:** _3:19cv693 HTW-LRA_

**HINDS COMMUNITY COLLEGE c/o Attorney General Jim Hood.,**        **DEFENDANT (S)**
**DR. CLYDE MUSE., President., TIMOTHY E. CRISLER, Instructor.,**
**TIMOTHY RUSH, Dean of Students., DR. TYRONE JACKSON, Former**
**Vice President/Title IX Coordinator, et al., SHARON ALEXANDER,**
**Title IX Coordinator/Student Conduct, et al., OFFICER PERCY TERRELL,**
**Campus Police; MISSISSIPPI DEPT OF EDUCATION c/o Superintendent**
**Carey M. Wright, E.D., & JOHN DOES 1-20**

---

### ORIGINAL COMPLAINT FOR SEXUAL HARASSMENT, ET AL.
### (JURY TRIAL DEMANDED)

COMES NOW, the Plaintiff in the above styled numbered cause of action pursuant to the (1) First, (4) Fourth, and (14) Fourteenth Amendments to the United States Constitution through Section (s) 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e, and 42 U.S.C. § 2000 (d) under Title IX of the of the Education Amendments of 1972, 20 U.S.C. § 1681-2., respectfully file this complaint against the Defendant (s) Hinds Community College, Dr. Clyde Muse, Mr. Timothy E. Crisler, Dean Timothy Rush, Dr. Tyrone Jackson, Ms. Sharon Alexander, Officer Percy Terrell, the Mississippi Department of Education and John Does 1-20 as the other Members of the Student Conduct and/or Local Disciplinary Committee. In Support hereof, Ms. Davis would show unto this Honorable Court the following facts to wit:

---

(i) The Plaintiff reserves the right arising under Rule 15 of the Fed. R. Civ. P., if any, to Amend this pleading at any appropriate time before the Court.

1

## 1.
### PLAINTIFF(S)

The Plaintiff, Ms. Chakakhan R. Davis are an adult female resident currently residing at 1134

Little Mound Subdivision, Hermanville, MS 39086. At this time, Ms. Davis would prefer all letter

correspondences and other pleadings entered in this action or proceeding to be forwarded unto

32942 / 50 Hwy 18, Utica, MS 39175.

## 2.
### DEFENDANT(S)

The Defendant, Hinds Community College is a Public School of Higher Education owned by the State

of Mississippi which are defined in Section § 11-46-1 of the Miss. Tort Claims Act as a Political Subdivision

who may be served with process of this Court by a Local Process Server or United States Marshall upon the

Attorney General of the State of Mississippi/ Mr. Jim Hood located at 550 High Street, Jackson, MS 39201 or

any other Method or Place of service of process upon him that complies with Rule 4 of the Federal Rules of

Civil Procedure and would constitute valid service of process upon this Defendant under the Fed. R. Civ. P.

See, e.g., Section 20 U.S.C. § 1001 of the United States Constitution and Murphy Bros. v. Michetti Pipe Stringing,

Inc., 526 U.S.344, 350 (1999) where the Supreme Court held that because service of process were improper,

the Court could not exercise *personal jurisdiction* over the Defendants.

The Defendant, Dr. Clyde Muse at all times relevant to this cause of action were the President of the

Hinds Community College Campuses and responsible for several functions of the School such as the

recommendation of additions and/or changes in all matters that affect the Colleges Policy (ies), as well as the

recommendation of additions or changes in Personnel and in Personnel Policy (ies) unto the Mississippi Board

of Education and/or Colleges Board of Trustees., and the Organization - Administration of the College (s) who

2

may be served with service of process by a Local Process Server or United States Marshall by personal service of process upon him at his last known residential-physical address or the Presidents Office or Dr. Clyde Muse Office on the Raymond Campus located at 608 Hinds Boulevard, Raymond, MS, 39154 / Dr. Clyde Muse Center of the Rankin Hind CC Campus located at 515 Country Place Parkway Pearl, MS 39208 or any other Method or Place of service of process upon him that complies with Rule 4 of the Federal Rules of Civil Procedure and would constitute valid service of process upon this Defendant under the Fed. R. Civ. P. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S.344, 350 (1999).

The Defendant, Mr. Timothy E. Crisler at all times of this disputed action were an Instructor over the Utica Hinds Community Colleges Radio and TV Production Broadcasting Program who may be served with service of process of this Court by a Local Process Server or United States Marshall by personal service upon him at his last known residential-physical address or the George E. Barnes Technology Building on the Utica Hinds CC Campus located at 34175 Hwy 18, Utica, MS 39175 or any other Method or Place of service of process upon him that complies with Rule 4 of the Federal Rules of Civil Procedure and would constitute valid service of process upon this Defendant under the Fed. R. Civ. P. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S.344, 350 (1999).

The Defendant, Dean Timothy Rush at all times relevant to this cause of action were the Dean of Students and responsible for several functions of the Utica-Vicksburg Hinds Community College Campuses who may be served with process of this Court by a Local Process Server or United States Marshall by personal service upon him at his last known residential-physical address or the Davis-Student Union Building on the Utica Hinds CC Campus located at 34175 Hwy 18, Utica, MS 39175 or any other Method or Place of service of process upon him that complies with Rule 4 of the Federal Rules of Civil Procedure and would constitute valid

3

service of process upon said Defendant under the Fed. R. Civ. P. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S.344, 350 (1999).

The Defendant, Dr. Tyrone Jackson at all times relevant to this cause of action were the Title IX Coordinator, District Dean of Students, and Vice President over Administrative Services at the Utica Mississippi Hinds Community Campus who may be served with process of this Court by a Local Process Server or United States Marshall by personal service upon him at his last known residential-physical address or the Human Resource Department of the Mississippi Delta Community College located at Highway 3 and Cherry Street, Moorhead, MS 38761 or any other Method or Place of service of process upon him that complies with Rule 4 of the Federal Rules of Civil Procedure and would constitute valid service of process upon this Defendant under the Fed. R. Civ. P. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S.344, 350 (1999).

The Defendant, Ms. Sharon Alexander at all times relevant to this cause of action were the Lead Deputy Title IX Coordinator, District Coordinator of Student Conduct-Development and District Coordinator of Student Government Association of the Raymond, Mississippi Hinds CC Campus who may be served with process of this Court by a Local Process Server or United States Marshall by personal service upon her at her last known residential-physical address or the Harris-Patrick Hall Office on the Raymond Hinds CC Campus located at 608 Hinds Boulevard, Raymond, MS 39154 or any other Method or Place of service of process upon her that complies with Rule 4 of the Federal Rules of Civil Procedure and would constitute valid service of process upon said Defendant under the Fed. R. Civ. P. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S.344, 350 (1999).

The Defendant, Officer Percy Terrell at all times relevant to this cause of action were the Chief of Campus Police or Security at the Utica Hinds Community College Campus and responsible for several

4

functions of the Campus, including, but not limited to the duty to "serve and protect" the life, liberty and property of everyone affiliated with and located on the Utica Hinds Campus. This Defendant may be served with process of this Court by a Local Process Server or United States Marshall by personal service upon him at his last known residential-physical address or the Campus Police Department on the Utica Hinds CC Campus located at 34175 Hwy 18, Utica, MS 39175 or any other Method or Place of service of process upon him that complies with Rule 4 of the Federal Rules of Civil Procedure and would constitute valid service of process upon said Defendant under the Fed. R. Civ. P. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S.344, 350 (1999).

The Defendant, Mississippi Department of Education at all times relevant to this cause of action were charged with the duty to hire Staff, Teachers or Instructors, provide public educational policy and the collection of laws or rules that govern the operations of educational institutions in Mississippi along with the Mississippi Board of Education or Board of Trustees of the Utica Hinds Campus which also qualifies as a Political Subdivision of the State of Mississippi as defined in Section § 11-46-1 of the Miss. Tort Claims Act, et seq. This Defendant may be served with process of this court by serving Ms. Carey M. Wright, E.D., *i.e.*, the Superintendent of the Mississippi Department of Education located at 359 N. West St, Jackson, MS 39201 or the Attorney General of the State of Mississippi / Mr. Jim Hood located at 550 High Street, Jackson, MS 39201 or any other Method or Place of service of process upon her that complies with Rule 4 of the Federal Rules of Civil Procedure and would constitute valid service of process upon this Defendant under the Fed. R. Civ. P. See, e.g., Section 20 U.S.C. § 1001 of the United States Constitution and Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S.344, 350 (1999).

The Defendant, John Does 1-20 at all times relevant to this cause of action were Members of the Local

/ Appeals Disciplinary Committee who were responsible for several functions of the Hinds Community College

Campuses, including but not limited to: the duty (ies) to set Policy (ies), Law (s), Standards or Codes of Ethics,

Codes of Student Conduct, Teacher / Student Complaint – Grievance Procedures and to take appropriate

disciplinary action toward a Teachers or Student accused of specific Misconduct or Code (s) and to determine

whether or not what's put into practice through the issuing of grievances at the College does not deprive a

Student out of her and/or his Due Process Rights or Equal Educational Benefit (s) provided by the School or

to take other nondiscriminatory actions that would serve the best interest of the School and complies with

the Due Process Clause of the Fourteenth Amendment, the duty to establish Rules of Order for the School

Committee, District Policy Manual, Bargaining Agreements, Policy contained in meeting minutes, strategic

plans, some elements of the Colleges Student Handbook such as Student Conduct Appeals, and other areas

as provided by the Schools Policy (ies) and/or established by Law. While, the true names or identities of these

Defendants has not yet been ascertained upon the date of filing this Complaint, after learning the precise

identities of these unknown Defendants through the uses of judicial mechanisms such as discovery., the

Plaintiff will substitute them for the fictitious parties mentioned in this suit under Rule 15 (c) of the FRCP.

### 3.
### JURISDICTION & VENUE

The Plaintiff incorporates paragraphs 1 through 2 above by reference and reasserts the same as if

republished here., except this Court has Federal Question Jurisdiction over the Subject Matter of this cause

under Section 28 U.S.C § 1331 of the United States Constitution. It provides that the District Courts shall have

Original Jurisdiction over all Civil actions arising under the Constitution, Laws, or Treaties of the United States.

Likewise, this Court has Supplemental Jurisdiction pursuant to Section 28 U.S C. § 1367 of the United States

Constitution over the State Law Claims arising under the Mississippi Tort Claim Act and other Constitutional

Law (s) within the State of Mississippi. The Plaintiff in this action has complied with Section §11-46-1, et seq., of the Mississippi Tort Claims Act and/or in the near future will provide the Defendant Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education with the prerequisite 90-day Pre-Suit Claim Notice before attempting to maintain an action existing hereon. Particularly, this Sexual Harassment Complaint arises under the First, Fourth, and Fourteenth Amendments of the United States Constitution through Section (s) § 11-46-1 (a) of the Mississippi Tort Claims Act, 42 U.S C. § 1981, 42 U.S C. § 1983, 42 U. S.C. § 2000e, and 42 U.S.C. § 2000 (d) of Title IX of the Education Amendments Act of 1972. {I}t provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination upon the basis of race, sex, color, national origin, disability, religion, age, sexual orientation, or status as a parent, under any educational program or activity receiving Federal Financial Assistance." See, e.g., 20 U.S.C. § 1681, et seq. The Supreme Court has found an implied private right of action in Title IX, with private parties authorized to seek monetary damages for intentional violations (such is the case here). See, e.g., Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 690–93, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979). Student claims of Sexual Harassment by Teachers or other Students are well-established examples of such suits. See also, Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290–91, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) (by a teacher); and Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 643, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) (by a fellow student). Nevertheless, this Court has *in personam* or *personal jurisdiction* over all of the Defendants named in this action in her and/or his individual capacities, to the extent, s/he conduct business in and/or wrongfully committed the tortious acts or omissions complained of in this complaint exclusively within Hinds County, Mississippi on the dates in question. Contrawise, Venue is proper in this Court since all of the named

Defendants reside in this Judicial District and/or all or a substantial part of the wrongful acts or omissions giving rise to this suit occurred, or property that is the subject of the action is situated under Section 28 U.S.C. §1391 (1-2) of the United States Constitution, et seq.

**4.**
**FACTUAL BACKGROUND & PROCEDURAL HISTORY**

The Plaintiff incorporates paragraphs 1 through 3 above by reference and reasserts the same as if republished here., except the Plaintiff in this action has been unable to attend College at Hinds Community College (Utica Branch) or any of its Campuses since January 29th 2018. Notably, on November 15th during the 2017 Fall Semester at Hinds CC, Ms. Davis had went to the Raymond Campus to register and enroll in school at the Utica Hinds Campus for the Spring 2018 Semester. Initially, the Plaintiff had planned to major in Criminal Justice but couldn't after being informed by Ms. Jennifer Crutchfield that financial aid would not cover the tuition cost. Summarily, Ms. Davis had previously attended Hinds CC in Utica within the calendar years of 2004-2006 and attained a Associate's Degree in Psychology that's Academic in nature. Further, the Plaintiff were informed that Financial Aid would be available if she had joined a Technical Program at the College and that Criminal Justice were another Academic Major or Study. Notably, on October 24th 2017, Ms. Davis had performed a musical song in a talent show at the Utica Hinds Community College Campus. The song were strictly performed for educational purposes and the lyrics were composed of and spoke out against early parenthood, violence and the use of drugs. Afterwards, on sometime during the 2017 Fall Semester, Ms. Davis had asked Mr. Joshua Knox who oversees Student Activities at the Utica Campus, had the talent show been recorded and was told by him to go to the George E. Barnes Technology building to see if a student from the Radio and TV Production Class had recorded it. The Plaintiff went and that's how she became familiar with Mr. Timothy E. Crisler who given her one of his business cards and asked was she interested in joining the Radio

and T.V. Production Broadcasting class as set forth in **Exhibit "A"** attached hereto. The Plaintiffs response was that she had planned to attend Hinds in the Spring 2018 Semester to Major in Criminal Justice and if it were possible that she would add the Radio and TV Production class. Accordingly, upon Ms. Davis registering at the Raymond Hinds CC Campus on November 15th 2017 and being informed the she would have to pay the tuition costs if decided to Major in Criminal Justice (*i.e.,* another Academic Study at Hinds)., the Technical Program that the classroom of Mr. Crisler offered was taken under consideration. Subsequently, a copy of the schedule for the Spring 2018 Semester that were given unto Ms. Davis by Ms. Jennifer Crutchfield shortly was taken to Mr. Timothy E. Crisler to see if it were correct of where and when he made statements that the Plaintiff was joining the class to look up in his handsome face. The Plaintiff ignored this false accusation and then left the George E. W. Barnes Technology Building while stating unto herself that she has always been a well-known local musical artist within the City of Utica, Mississippi. On January 8th 2018, which were the commencement day of the Spring 2018 Semester, Ms. Davis decided to sit on the second row of students in the Radio and TV Production class and were told to have a seat in the first row of Students by Mr. Timothy E. Crisler. The Plaintiff also completed a class portfolio or biography with the rest of the Radio and TV Production Class participants approximately on this date and answered that her spouse would be a person that she would go to for help and on or about the same to one of the questions asked, whereas, Mr. Crisler inquired into Ms. Davis Marital Status in front of the class. Summarily, on or about January 9th 2018 Mr. Crisler had asked the class what was the definition of Production and Ms. Davis was called on to answer the question after raising her hand. Her response was deemed incorrect by Mr. Crisler, whereas, later on that day or the following she and James had went to the Radio and TV Production's Class News Room to start working on a class assignment of why did I chose to attend the Utica Hinds CC and Major in ___.   Mr. Timothy Crisler came down to the News Room

and stated that James was going to have him some fun doing him some Production which were sexual, offensive and derogatory in nature. This offensive sexual insult by the Radio and TV Broadcasting Instructor toward the Plaintiff referred directly to the incorrect response she had given unto the definition of Production earlier in class on the same day because Ms. Davis was with James, a male Student who he perceived her to be intimately involved with or into during a continuous school work relationship between them to complete class assignments.**1** On or about January 10th - 11th 2018 a female student (name unknown) that wasn't in the Radio and TV Production Program came into the classroom and Mr. Crisler stated to Ms. Davis that she be throwing herself all at James by putting her boobs all up on the Computer up in his face. The Plaintiffs response was that she would too if she was the (unknown female Students) age because James had no kids, was outgoing and were extremely bright. Later, on this day, Mr. Crisler made comments that Ms. Davis was stupid in front of the class that were due to her complimenting James. Subsequently, on January 11th 2018 previous Semester Student Jonathan Bradford and the Plaintiff were leaving out the class to go to the Fine Arts Building of the Utica Hinds Campus to work on the class assignment of why did I attend the Utica Hinds CC campus and major in _____ when Mr. Crisler stated his classroom smelled like "cooty" toward the Plaintiff. That's when and where Ms. Davis asked this previous semester student of the class what kind of instructor was Mr. Crisler and stated unto him that she had got offended by him stating that his class smelled like "cooty" earlier not because her hygiene were offensive but because she had been raped.**2** Ms. Davis further stated

---

1 Particularly, Ms. Davis interacted with James Marcus who had previously attended the Radio and TV Broadcasting class within the 2018 Spring semester because he were excellingly smart with the computer software, cameras and other technology (ies) involved with the program that she wasn't familiar with.

2 The United States Supreme Court has stated in the case of Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1002-1003 (1998) that the words or actions of a Child - Student may not have the same meaning and impact as the words or actions of an Adult - Teacher. Thus, the identity of the harasser and the social context in which the incident occurs may be relevant to determining whether the harassment is sufficiently severe, persistent, or pervasive to constitute actionable harassment.

unto Johnathan that she were a much older student than he and did not want to make the young men feel

led on that were coming at her intimately at the Utica Hinds Campus due to possibly provoking an campus

violence incident between the males that constantly pursued her intimately at the School. His response was

that she would make a good mom-wife and reminded him of his mom. At all times relevant to the events

complained of in this action, Ms. Davis were a 32-year-old female college student and was extremely popular

with classmates and other attendees of the Utica Hinds Campus. Furthermore, she maintained a positive and

professional relationship with employees of the school, participants of the Radio and TV Production

Broadcasting class and other attendees at the School within the 2018 Spring Semester, until she were referred

to as Ms. Davis by them and constantly mistakened by the employees and students to be an employee of the

College. In slang or hip expressions, the term "cooty" vagina or p***y has at least two meanings or phrases:(1)

a female being a primitive target of sexual exploitation and nothing more or (2) having an indecent or

unpleasant hygiene or odor in the vaginal area. The Defendant Timothy E. Crisler also on sometime during

the start pf the Spring 2018 Semester had introduced the new participants of the Radio and TV Production

Program unto previous video clips or recordings taken by Students of his class and edited after going on trips

of the class to complete assignments; and made a discussions before the class about a female in a displayed

recording being almost nude "in dazy dukes" and dancing with her legs open so that everyone could see her

"cooty" vaginal area. In particular, Mr. Crisler stated that she kept getting low to the floor / ground and he was

not going to turn his video camera away but to continue recording her vaginal area and going down low with

her with his video camera in record mode.

Summarily, on January 12th 2018, Ms. Davis told Mr. Timothy E. Crisler that she found his derogatory

comment that his classroom smelled like "cooty" offensive and asked Johnathan to state what was stated the

previous day at the Fine Arts Building by her of which he declined to repeat. Also on sometime from January

8th -12th 2018 Mr. Crisler brought up Ms. Davis residing at home with her parent during class as retaliation -

humiliation for her not showing any intimate interest in him. For example, he used the high expense of class

trip assignments as if Ms. Davis couldn't afford it. Conversely, to make the young Male students who shown

intimate interest in Ms. Davis unattracted to her by bringing up her living arrangements to state that she could

not take care of a younger man if she were to date them. This humiliation continued to occur in the Radio

and TV Production Program as humiliation-retaliation for the Plaintiff having contacts with James that he

thought were intimate in nature and other participants of the class as Ms. Davis worked alongside them to

complete class assignments. The Plaintiffs response to Mr. Timothy E. Crisler's derogatory comment or gesture

on January 12th 2018 that his classroom smelled like "cooty" on January 11th 2018 were nonviolent (*i.e.,* of no

threatening words or behavior toward his safety or the participants of the Radio and TV Production class), but,

consistent with the two slang or hip phrases that the Radio and TV Broadcasting Instructor referred to the

Plaintiff as being and/or smelling like toward the male participants of the class to make them unattracted to

her out of lust, spite or jealousy stemming from his own desire for sexuality or love toward this female Student

and shown through verbal abuse and/or derogatory remarks, insults and/or gestures of a sexual nature as to

disturb any reasonable female-student in the similar circumstance and cause her to experience fear and/or

anger as a result of emotional trauma inflicted thereon of a sufficient severity (such as the case here) by an

College Instructor through the use of verbal insults, remarks or gestures toward the vaginal area of a female

student. Thus, on January 12th 2018 the Plaintiff stated in front of the class unto Mr. Crisler that she wasn't

sure if she were supposed to be in the Radio and TV Production class to look up in his face or because she

was in love with James before escorting herself out of the hostile environment, created by sexual harassment

or Misconduct in the Radio and TV Production Program offered at the Utica Hinds Campus. Mr. Crisler repeatedly assumed that the Plaintiff were attracted to and/or intimately involved with James Marcus and used intimate gestures toward several other Male Students of his class involving the Plaintiff to create strife between Ms. Davis and Mr. James Marcus school work relationship. For example, on or about January 10th – 11th 2019 Mr. Crisler called all the Male students in front of the class and shooked each one of their hands. He then preceded to ask the class which one had shook his hand better and Ms. Davis stated Johnathan Bradford. Mr. Crisler then looked at Mr. James to create confusion between Ms. Davis and his school relationship as if the Plaintiff were intimately interested in Jonathan Bradford of which neither because of their education focus or needs as 18-20-year-old College men. For example, on January 12th 2018 Mr. James Marcus were to help the Plaintiff complete her class assignment of why did I come to Hinds and major in ___, but he did not appear due to this misconduct of Mr. Crisler or his own jealousy arising therefrom, whereas, previous Student Mr. Johnathan Bradford did instead. At the beginning of the Semester, the Plaintiff saw the previous participants of the Radio and TV Production Class work, and picked James as her tutor or mentor because his edited and competed assignments that were the most notable or exceptional though all others were gifted as well. The aforementioned unwanted sexual misconduct of the Radio and TV Production Broadcasting instructor were intentional acts of sexual harassment that created a hostile and offensive school environment for this female Student and others at the Utica Campus that was known of or should have been known of by the Defendants Hinds Community College, Dr. Clyde Muse and the Mississippi Department of Education. As a direct and/or proximate cause of these responsible Defendants deliberate indifference to the obvious need to train, supervise, and discipline sexual harassment of its Instructors and other employees at the School for the safety and wellbeing of its Students, Ms. Davis suffered and continues to suffer serious and extreme humiliation, a

total loss of educational opportunities, extreme emotional distress and other constitutional harms or damages. After Ms. Davis left the Radio and TV Production class on January 12th 2018; the described sexual misconduct of the Defendant Mr. Timothy E. Crisler were immediately reported to the Raymond Campus HR Department. The Plaintiff had the right to be free from a sexually hostile and offensive school environment not conductive of learning while attending the Utica Hinds Campus within the Spring 2018 Semester, to the extent, her liberty interest to bodily integrity were protected by the Due Process Clause of the Fourteenth Amendment that premises sexual harassment or abuse by a school employee violates that right. See, e g., Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450–51 (5th Cir. 1994) (holding that a student was deprived of a protected liberty interest when sexually assaulted by her teacher) and Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir.1981). Shillingford involved a § 1983 action by a tourist against a New Orleans police officer. Shillingford was attending Mardi Gras festivities in New Orleans when he attempted to take a photograph of the officer making an arrest. The officer was annoyed and struck Shillingford with his nightstick, inflicting some physical injury. The Fifth Circuit found such action sufficient "to transcend the bounds of ordinary *tort law* and establish a deprivation of constitutional rights." Id. at 266.**3** There is a direct and/or proximate causal connection between the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education willful failure to train, supervise and discipline sexual harassment at the Hinds College Campuses by its Instructors-Employees through the use of constitutional policies or customs as to prevent teacher-student sexual harassment at the School which constitutes a pattern or practice of intentional violations of Students

---

3  The Fifth Circuit cited Shillingford for this principle of law in Jefferson v. Ysleta Independent School District, 817 F.2d 303, 305 (5th Cir.1987), a case involving a violation of a schoolchild's substantive due process rights by a teacher. The teacher in Jefferson lashed a second grade student to a chair for the better part of two school days. Again, the Court found that such actions by the teacher violated the student's substantive due process " "right to be free of state-occasioned damage to [her] bodily integrity.' " Id. (quoting Shillingford, 634 F.2d at 265).

14

First, Fourth and Fourteenth Amendment Rights through Section 42 U.S.C. § 1983 (West 2014) of the United States Constitution and Title IX of the Education Amendments Act of 1972, 20 U.S.C. Â§1681, et seq. Jett v. Dallas Independent School District, 491 U.S. 701 (1989). The Defendants Hinds Community College, the Mississippi Department of Education and Dr. Clyde Muse were deliberate indifferent to the educational needs of Students at the Hinds Community College Campuses after having actual or *via* constructive notice of teacher-student sexual harassment at the school that were sufficient to enable them to take action or reasonable measures to avoid from recurring. See, e.g., Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). Had the Defendant Mr. Timothy E. Crisler been reasonably trained, supervised or disciplined on the Colleges non toleration of teacher-student sexual harassment by these Supervisory Defendants., then the severe, pervasive and persistent sexual harassment that Ms. Davis endured on the dates in question while attending Hinds in Utica would have not occurred. See, e.g., Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir.1981); Wanger v. Bonner, 621 F.2d 675 (5th Cir.1980). The described unconstitutional and discriminatory acts or omissions of the Defendants employees were based upon the sex of this female Student which created a hostile learning environment in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution and thus deprived Ms. Davis out of an equal opportunity to complete the Radio and TV Production Broadcasting Program provided by Hinds under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l (a) and Section 42 U.S.C. § 1983 of the United States Constitution. See also, e.g., Torrespico v. Columbia Coll., No. 97 C 8881, 1998 WL 703450, at *17 (N.D. Ill. Sept. 30, 1998). The Defendants Hinds Community College and the Mississippi Department of Education knew or should have known that other Participants of the Hinds Community College Campuses were treated differently than Ms. Davis and other female Students at the Utica Hinds Campus that were

motivated by the Students belonging to and/or membership in a particular class which does not comport with

the requirements of Equal Protection of the Law or providing Equal Educational Opportunities or Equal

Learning Facilities for all Students enrolled at the Hinds Community College Campuses. See, e.g., Section 42

U.S.C. § 1983 of the United States Constitution; Engquist v. Oregon Department of Agriculture, 128 S.Ct. 2146,

2148-2149, 2157 (2008) and Brown v. Board of Education, 347 U.S. 483 (1954). The Defendants Hinds

Community College; Dr. Clyde Muse and the Mississippi Department of Education knew of teacher-student

sexual harassment at the Utica Hinds, Campus, were in a position to stop and/or end the severe and pervasive

sexual misconduct toward students creating a hostiles school environment that's not conductive of learning,

but failed to remedy said acts as to discriminate agianst the Students belonging to the Utica Branch due to

its attendees being predominantly African American which has no legitimate governmental objective or State

interest but to segregate Students attending the College Campuses. Id. Likewise, these Defendants employees

as Dr. Tyrone Jackson, Dean Timothy Rush, Ms. Sharon Alexander and John Does 1-20 as the other Members

of the Local Disciplinary Committee unwarranted infliction of Corporal Punishment at the School violates the

Substatiative / Equal Protection components of the Due Process Clause of the Fourteenth Amendment and is

so arbitrary, fanciful or capricious as to shock the conscience and not be reasonably related to a legitimate

State goal or Governmental interest of maintaining a School atmosphere conductive of learning under Section

(s) 42 U.S.C. § 1983 and 20 U.S.C. § 1681-88 of Title IX of the Education Amendments Act of 1972. See, e.g.,,

Williams v. Tex. Tech. Univ. Health Sciences Ctr., 6 F.3d 290, 294 (5th Cir. 1993) and Pham v. Univ. of La. at

Monroe, 194 F. Supp. 3d 532, 546 (W.D. La. 2016) ("The substantive due process analysis asks whether

Defendants' conduct was so arbitrary as to shock the conscience."). See also, Doe v. Taylor Indep. Sch. Dist.,

15 F.3d 443, 450 (5th Cir. 1994) where the Court of Appeals for the Fifth Circuit held:

16

{T}hat the "contours" of a student's substantive due process right to be free from sexual abuse and violations of her and/or his bodily integrity were clearly established in 1987. In 1987 the Fifth also stated that it was clearly established in 1985 that the Due Process Clause protects a schoolchild from being lashed to a chair for the better part of two days for "instructional purposes."

**(Discussion of the Law)**

Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l (a), states that:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 19. 34 C.F.R. § 106.8 (b) which provides:

" ... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." For example, in Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

Contrawise, in Davis v. Monroe County Board. of Education, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in Gebser to cases where the harasser is a student, rather than a teacher. Davis held that a complainant may prevail in a private Title IX damages action against a School District in cases of student-on-student harassment where the funding recipient is:

a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and

b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 1669-76.

Title IX jurisprudence as well as Department of Education Regulations have long recognized that a single event such as rape constitutes harassment so severe, pervasive and objectively offensive that it deprives a victim of access to the educational opportunities provided by the school: "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the

harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. For instance, a single instance of rape is sufficiently severe to create a hostile environment (*i.e.,* conduct that is sufficiently severe, but not persistent or pervasive, which result in a hostile environment[4] under Title IX sexual harassment).." See also, e.g., Franklin v. Gwinnett County Public Schools (1992), where the U.S. Supreme Court held that private citizens could collect damage awards when teachers sexually harassed their students. Thus, under the regulations issued in 1997 by the U.S. Department of Education, which administers Title IX, school districts should be held responsible for harassment by educators if the harasser "was aided in carrying out the sexual harassment of students by his or her position of authority with the institution." See, e.g., Davis v. Monroe County Board of Education, and Murrell v. School Dist. No. 1, 1999, where schools were assigned liability for peer-to-peer sexual harassment if the Plaintiff had sufficiently demonstrated that the administration's response shows "deliberate indifference" to "actual knowledge" of discrimination. Re-collectively, a hostile or offensive environment created by sexual harassment of a student or students by other students, employees, or third parties is conduct of a sexual nature that is so sufficiently severe, persistent, or pervasive as to limit a student's ability to participate in or benefit from the educational program because of such an hostile or abusive educational environment. However, while deciding whether conduct is sufficiently severe, persistent, or pervasive, the conduct should be considered from both a subjective and objective perspective. Whereas, in making this determination, all of the following relevant circumstances are considered:

The degree to which the conduct affected one or more students' education. For a hostile environment

---

4  Page 7 of the Hinds CC Title IX Sexual Misconduct Policy defines a Hostile Environment Caused by Sexual Harassment as follows:

A hostile environment is created when a person in authority requests sex in exchange for favors and through the presence of demeaning or sexual photographs, jokes or threats that create an intimidating offensive environment. See, e.g., *Exhibit "C"* attachment.

18

to exist, the conduct must have limited the ability of a student to participate in or benefit from his or her education or altered the conditions of the student's educational environment. Many hostile environment cases involve tangible or obvious injuries. For example, a student's grades may go down or the student may be forced to withdraw from school because of the harassing behavior. A student may also suffer physical injuries and mental or emotional distress. However, a hostile environment may exist even if there is no tangible injury to the student. For example, a student may have been able to keep up his or her grades and continue to attend school even though it was more difficult for him or her to do so because of the harassing behavior. A student may be able to remain on a sports team, despite feeling humiliated or angered by harassment that creates a hostile environment. Harassing conduct in these examples alters the student's educational environment on the basis of sex.

Nevertheless, Section 42 U.S.C. § 1983 of the United States Constitution provides:

{T}hat every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. See, e.g., McMillian v. Monroe County, Alabama, 117 S. Ct. 1734 (1997), and Board of the County Comm'rs v. Brown, 117 S. Ct. 1382 (1997).

According to Monell v. Department of Social Serv., 436 U.S. 658 (1978), a municipal government can be held liable under Section § 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality. Municipalities, however, cannot be held liable under Section § 1983 for constitutional torts on a theory of *respondeat superior*. In other words, municipalities are not liable for the actions of their employees simply as a result of employment status: an employee must be acting pursuant to a municipal "policy." To establish a municipal "policy," a plaintiff must prove that the municipal action was (i) taken with the requisite degree of culpability and (ii) causally linked to the deprivation of a federal right. This standard has produced, in the words of Justice Breyer, "a highly complex body of interpretive

19

law." Brown, 117 S. Ct. at 1401 (Breyer, J. dissenting). See also, e.g., Kentucky v. Graham, 473 U.S. 159 (1985) where the U.S. Supreme Court held that individual-capacity suits seek to impose personal liability upon a government officer for actions s/he takes under color of law. Furthermore, that official-capacity claims or suits under Section 42 U.S.C. §1983 against an officer or employee are generally treated as suits against the governmental entity in which s/he is employed. See, e.g., Doe v. Taylor Independent School District, 15 F.3d 443 (5th Cir. 1994) where the Fifth Circuit held that school officials are liable for supervisory failures that result in the molestation of a school child by a teacher if those failures manifest a deliberate indifference to the constitutional rights of that child.' Id at 445, 453, 456-57. See also, e.g., 42 U.S.C. § 1981 of the United States Constitution, et seq.

<u>ARBITRARY DECISION OF THE LOCAL STUDENT CONDUCT DISCIPLINARY COMMITTEE</u>

The Defendants Hinds Community College and the Mississippi Department of Education at all times relevant to this cause of action were a recipient of federally funded programs or assistance under Section (s) 42 U S.C. § 2000e and 42 U.S.C. § 2000 (d) under Title IX of the of the Education Amendments of 1972. The Hinds Community College Campuses has and publishes a Student Handbook which encompasses Rules and Regulations governing Student Conduct that may subject her or him to discipline irrespective of alleged impermissible conduct or behaviors on the Hinds CC Campuses as set forth in ***Exhibit "B"*** attached hereto. It also has and publishes disciplinary procedures that are to be employed or followed when a student is alleged and/or accused of misconduct that may be in violation of its Rules governing student conduct. The Hinds Community Colleges President Dr. Clyde Muse who has the authority to recommend additions or changes to the constitutional enforcement of the Schools Freedom of Speech policy (ies) has a history with the Foundation for Individual Rights in Education (FIRE) over the recent years for violating a student's rights to

freedom of speech at the Hinds Community College Campuses which imputes actual or *via* constructive notice

unto the responsible Supervisory Defendants named in this action that an unconstitutional student conduct

and discipline policy exist at the Hinds CC Campuses. See, e.g., https://www.thefire.org/fire-letter-to-hinds-

cc-president-clyde-muse/ where FIRE held that it were concerned about the threat to freedom of speech

posed by Hinds Community College's (HCC's) decision to discipline a student by the name of Isaac

Rosenbloom for "flagrant disrespect" of an HCC instructor and remove him from the instructor's course

because he used the word "fuck" in her presence outside of class. Accordingly, the Defendants Hinds CC, Dr.

Clyde Muse and the Mississippi Department of Education has been deliberately indifferent to the needs of

students at Hinds by responding to multiple events of teacher-on-student sexual harassment that existed

both before and after this sexual harassment incident with Plaintiff while being a student at the Utica Branch

within the Spring 2018 Semester. The Defendant's Hinds CC/Attorney General Jim Hood and the Mississippi

Department of Education very policies, procedures and selective conduct code enforcement resulted in a

discriminatory environment for female students. What is more, the Defendant's Dr. Tyrone Jackson and Sharon

Alexander's failure to promptly investigate and respond to the Title IX Complaint filed by Ms. Davis against

Mr. Timothy Crisler on January 12th 2018 allowed a condition to be created that substantially increased

attendees at the Hinds CC Campuses chances of being sexually harassed by its Staff and Instructors, as well

as others students as set forth in *Exhibit "C"* attached hereto. In particular, Dr. Jackson as the Title IX

Coordinator and Ms. Alexander as the Lead Title IX Coordinator willful failure to promptly investigate and

respond to teacher-student Title IX sexual harassment complaints furthered teacher-student sexual

harassment at the school and condones a hostile school environment to be created at the Utica Hinds CC

Campus thats not conductive of learning. This also effectively denied the Plaintiff, and other female students,

access to educational opportunities at the Hinds CC Campuses under the Due Process and Equal Protection Clause of the Fourteenth Amendment. Consequently, the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education intentionally failed to provide a school environment conductive of learning for the Plaintiff who underwent false allegations of serious student misconduct by the Defendants Dean Timothy Rush and Timothy E. Crisler and wrongfully punished when the unwanted sexual harassment of him as the Radio and TV Production class were so sufficiently severe, persistent – persuasive as to precipitate a response by any reasonable female participant as the victim of the sexual abuse of the Radio and TV Production Broadcasting Instructor on the dates in question as set forth in *Exhibit "D"* attached hereto. Nevertheless, both of the Defendants Dr. Tyrone Jackson and Ms. Sharon Alexander multiple roles at the College compromised the integrity and/or fairness of the alleged investigation into the Title IX Complaint, to the extent, their inadequate investigation or complete failure to investigate the Title IX Sexual Harassment Complaint filed by Ms. Davis were so unconstitutional that a student in the future who files a teacher-student Title IX Sexual harassment Complaint would be deprived out of equal educational opportunities.[5] The Plaintiff had the right to experience a safe educational environment and not to be subjected to retaliation for reporting the pervasive, severe and persistent Sexual harassment that she endured while being a participant in the Radio and TV Production Program offered at the Utica Hinds Campus. Sanches v. Carrollton-Farmers

_____

5  The Title IX coordinator should not have other job duties or responsibilities at the school that create a conflict of interest.   For example, serving as the Title IX coordinator and a disciplinary hearing board member over student conduct or counsel for the aggressor of sexual harassment may create a conflict of interest." To the extent Ms. Alexander's multiple roles at the Hinds Community College substantially lessened the hearing panels' fact finding and adjudicatory autonomy, the integrity of the process was compromised. See, e.g., Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 604-05 (D. Mass. 2016); at Brandeis Univ., 177 F. Supp. 3d at 606 ("The dangers of combining in a single individual the power to investigate, prosecute, and convict, with little effective power of review, are obvious. No matter how well-intentioned, such a person may have preconceptions and biases, may make mistakes, and may reach premature conclusions."). Nevertheless, Ms. Sharon Alexander's as the Hinds Community Colleges Title IX coordinator places her in the multiple, and inherently conflicting, roles of advocating for pervasive and persistent sexual harassment of instructors at the college by not investigating the unwanted sexual misconduct and wrongfully prosecuting the student on alleged criminal charges asserted by the aggressor (s) of such sexual misconduct (s).

Branch Indep. Sch. Dist., 647 F.3d 156, 170 (5th Cir. 2011). The false student Conduct Disciplinary charges allegedly instituted by Mr.. Timothy E. Crisler as the aggressor of the Sexual harassment toward this female Student while in the Radio and TV Production class, were not investigated by the Defendant Dean Timothy Rush or the Utica Campus Police "Officer Percy Terrell,", to the extent, the Plaintiff were willfully expelled from Hinds Community College without regard for the accuracy of the same and other evidence which substantiated the sexual misconduct of the Utica Hinds Radio and TV Broadcasting Instructor that was known or should have been known of by the Defendants Dr. Tyrone Jackson, Ms. Sharon Alexander and John Does 1-20 (as the other Members of the Local Disciplinary Committee) on January 29th 2018.**6** The Rules of Evidence and/or Preponderance of Evidence Standards as set by the Schools Local Disciplinary Committee are not only procedurally flawed - biased, but enforced in such a way as to violate Students of the College Campuses Fourteenth Amendment Right (s) to Due Process of Law. Doe v. Cummins, 662 F. App'x 437, 446 (6th Cir. 2016).

The Defendants Dean Timothy Rush and Officer Percy Terrell adverse actions toward this female Student retaliatory in nature and thus were the sole and/or proximate cause of the intentional deprivations of Ms. Davis right to bodily integrity, liberty and property interest rights under the Due Process Clause of the Fourteenth Amendment, et seq. The Plaintiff had a right as implicated therein, to continue her education at another Hinds Branch or another school setting of her choice in good standing, to the extent, the Defendants

---

6 See, e.g., Page 67, Section V CRIMINAL INVESTIGATION of the 2018-19 Hinds CC Student Handbook which provide as follows:

The Campus Police Department serves as the primary investigation agent of the College on matters requiring investigation. This department is staffed with professionals who have constabulary authority under the laws of the State of Mississippi. In College operated residence halls the Resident Hall Directors, Resident Assistants and Director of Housing perform investigation duties and work jointly with Campus Police and the Dean of Students/Operating Dean. All employees are encouraged to teach students good behavior and to request investigation assistance and/or to file a disciplinary action report when the situation merits further action.

Dr. Tyrone Jackson, Dean Timothy Rush, Officer Percy Terrell, Ms. Sharon Alexander and John Does 1-20

willfully deprived her out of guarantees, immunities or privileges as provided by the Due Process Clause of

the Fourteenth Amendment, et seq. See, e.g., Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001); Sanches v.

Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156, 170 (5th Cir. 2011) and Papelino v. Albany Coll. of

Pharmacy of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011). The Plaintiff posed no risk to the health or safety of

herself or others while being enrolled at Hinds as alleged by the Defendant Dean Timothy Rush, to the extent,

this Defendant, Dr. Tyrone Jackson, Ms. Sharon Alexander and John Does 1-20 expulsion of Ms. Davis from

Hinds Community College on January 29th 2018 were corporal punishment inflicted in a arbitrary, fanciful or

capricious manner under Section 5 U.S.C. § 706 (2) (A) of the Administrative Procedures Act.[7]  Likewise,

contrary to a constitutional right, power, privilege or immunity under Section 5 U. S. C. § 706 (2) (B) of the APA

and far exceeds or is in excess of the statutory jurisdiction, limitations or authority of the Defendant Hinds

Community College; Dr. Clyde Muse; the Mississippi Department of Education; and John Does 1-20 under

Section 5 U. S. C. § 706 (2) (B-C) of the Administrative Procedures Act or is taken without observance of

procedures required by law under Section 5 U. S. C. § 706 (2)(D) of the Administrative Procedures Act.[8]  The

---

7  Under the Administrative Procedures Act "Sanction" includes the whole or a part of an agency—

    1. prohibition, requirement, limitation, or other condition affecting the freedom of a person;
    2. withholding of relief;
    3. imposition of penalty or fine;
    4. destruction, taking, seizure, or withholding of property;
    5. assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees;
    6. requirement, revocation, or suspension of a license; or
    7. taking other compulsory or restrictive action.

8  Under Section 3 of the Administrative Procedures Act {Definitions for the purposes of this [chapter] —

    "Agency" means each authority of the Government of the [State], whether or not it is within or subject to review by another agency, but does not include:

    1. any part of the Government of the United States

video recording of this incident occurrence on January 12th 2018 depicts' that Ms. Davis posed no risk of

danger or harm to the health or safety of herself or to the others on the date of making a response unto the

severe retaliation-humiliation she endured for not showing any intimate interest in the Utica Campus Radio

and TV Production Programs Instructor. Summarily, on January 29th 2018., Ms. Davis went before the Student

Conduct or Local Disciplinary Committee to answer unto the false student conduct charges, whereas, Ms.

Sharon Alexander were present as a Member and Counsel to Mr. Timothy E. Crisler. False student reports or

statements that did not comply with the requirements of the Hinds CC 2018-19 Student Handbook were

entered into evidence by Mr. Timothy E. Crisler and Ms. Sharon Alexander, that are inconsistent with the

statements and actions of Ms. Davis on the January 12th 2018 video recording of the incident taken by Mr.

Crisler. As such, a credibility issue were presented with the student witness reports as to cast doubt upon their

account of the events as set forth in *Exhibit "E"* attached hereto. Page 68 of the Hinds CC 2018-2019 Student

Handbook provides under Subparagraph No. VI B (8) that if a witness elects not to appear, that a written

affidavit may be used which is a notarized document. Apparently none of the participants of Mr. Crisler's class

elected to appear at the Student Conduct Disciplinary Hearing, whereas, all alleged witness statements of the

Radio and TV Production Class were not only false but not sworn to under oath and would have been properly

rejected by the Local Disciplinary Committee as set forth in *Exhibit "F"* attached hereto.9  The Administrative

Procedures Act requires this Court to hold unlawful and set aside any Agency10  action that is "contrary to a

---

    2. the [legislature];
    3. the courts of the [State];
    4. the governments of the territories or possessions of the United States.

9  See, e.g., https://cdn2.hubspot.net/hubfs/196949/Documents/Student_Handbook.pdf and Mathews v. Eldridge, 424 U.S.
319, 332 (1976). Mathews, 424 U.S. at 335.

10  "Agency" is defined for purposes of the Administrative Procedures Subchapter of the APA 18 in pertinent part as follows:

constitutional right, power, privilege or immunity under Section 5 U. S. C. § 706 (2)(A-B), in excess of statutory

jurisdiction, authority or limitations" under Section 5 U. S. C. § 706 (2)(B-C) or is "taken without observance of

procedure required by law" under Section 5 U. S. C. § 706 (2)(D). While, it is true that Ms. Davis referred to

some of the Male Students of the Radio And TV Production class as not desirable men but attractive young

men because of non-paints sagging and other non-thuggish, unruly or crude behaviors, it are untrue that

sexual passes, advances or gestures were made toward them by her which evince error or injustice. The Plaintiff

as the accused Student of Codes of Conduct at the School had a Due Process Right to cross examine these

witness that were to be present at the Student Conduct hearing on January 29th 2018. "Due Process requires

an opportunity to confront and cross-examine adverse witnesses." See e.g., Goldberg v. Kelly, 397 U.S. 254,

269 (1970) and Doe v. Univ. of Cincinnati, 872 F.3d 393, 400–01 (6th Cir. 2017) (quoting Flaim v. Med. College

of Ohio, 418 F.3d 629, 636 (6th Cir. 2005)). Accordingly, the court held that "[i]f a case 'resolves into a problem

of credibility, cross-examination of witnesses might . . . be essential to a fair hearing.'" Id. at 401 (quoting

Flaim, 418 F.3d at 641); see also Doe v. Baum, 903 F.3d 575, 578 (6th Cir. 2018) ("[I]f a public university has to

choose between competing narratives to resolve a case, the university must give the accused student or his

agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-

finder."). Thus, it were after Mr. Timothy E. Crisler referred to the Plaintiff as Ms. James before the class and

used other intimate gestures toward Ms. Davis with the other Male participants of the Radio and TV

Production class, when she stated that it was not her intent to date a younger (*i.e.,* 18-23 years old) but if it

were in Gods will that she would have no other choice and would play Stella from the movie "Stella Got Her

---

(1)  "agency" means each authority of the Government of the United States, whether or not it is within or subject to review
      by another agency.

26

Groove Back." Further, that she aren't a bad woman and their minds need to be focused on an education. See, e.g., https://www.youtube.com/watch?v=UKOqAafM7I4; https://www.youtube.com/watch?v=LCHGq6jkzpI and https://www.youtube.com/watch?v=TrwLJTGuNH0. The unwanted sexual gestures of Mr. Timothy E. Crisler as the Radio and T.V. Production Broadcasting Instructor becomes clearer on the dates in question when one considers the video evidence used during the disciplinary hearing of this matter disclosing statements made by Ms. Davis regarding his sexual misconduct (*i.e.,* statements that he wasn't supposed to be sexually harassing her-students and that she wasn't sure if she was supposed to be in his class to look up in his face or because she was in love with James because he constantly referred to her as Ms. James out of lust, spite and/or jealousy arising out of his own desire for sexuality or love) with this female Student. The Defendants Dr. Tyrone Jackson, Ms. Sharon Alexander and John Does 1-20 approved of the unwanted sexual misconduct of Mr. Timothy E. Crisler as the Radio and TV Broadcasting Instructor toward the Plaintiff on the dates in question at the Utica Hinds Community College Campus and thus were deliberately indifferent to the obvious need to take remedial action to prevent Teacher-student sexual harassment at the School. Contra wise, during the Spring 2018 Semester the (name unknown) Mr. Crisler also flirted with the (unknown) female student would come into his class and state that he wanted a young wife toward the Plaintiff in this action. Accordingly, during the student conduct hearing before the Local Disciplinary Hearing on January 29th 2018, the Plaintiff objected to the letter statements of the other participants of the Radio and TV Production class upon the basis that they had a reason for not telling the truth because of not wanting to fail the class or interest in the outcome for testifying falsely and in the Instructors favor such as the promise of an A at the end of the Semester. Thus, after the conclusion of evidence and oral argument, the Committee expelled Ms. Davis from the attending Hinds Community College, whereas, the Plaintiff repeatedly informed that the sexual

27

harassment of Mr. Crisler precipitated the outburst or incident on January 12th 2018. Furthermore, Ms. Davis stated before the Members of the Disciplinary Committee that any reasonable victim of the retaliation-humiliation she endured for not showing any intimate interest in Mr. Timothy E. Crisler, while being a student in the Radio and TV Production class would have responded in fear or anger. Summarily, she was told by Ms. Sharon Alexander who presided as one of Local Disciplinary Committee Members on the same that she would be allowed to present that argument during a hearing into the facts of the Title IX sexual harassment complaint filed by her with the School against Mr. Timothy Crisler which never occurred and evidences intentional gender bias and on unfair Title IX Complaints Procedure by authorities of the School.

The Fifth Circuit have consistently held that a student has a right to be free from corporal punishment inflicted in a way that is "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." See, e.g., Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243, 1246 (5th Cir.1984). Likewise, that the infliction of "corporal punishment in public schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.' " See, e.g., Fee v. Herndon, 900 F.2d 804, 808 (5th Cir.) (quoting Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243, 1246 (5th Cir.1984), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990). As such, the Local Disciplinary Committee wrongly found Ms. Davis to have committed the alleged offenses and expelled her from the college which is arbitrary and could serve no legitimate state goal of maintaining a school atmosphere conducive to learning. Id. Therefore, the alleged investigation into the Title IX sexual misconduct complaint were procedurally flawed, biased and discriminatory toward the sex of Plaintiff, to the extent, Mr. Crisler were treated favorable by the Defendants Dr. Tyrone Jackson, Dean Timothy Rush, Officer Percy Terrell, Ms. Sharon Alexander and John Does 1-20 as

the Members of the Local Disciplinary Committee. Justice Powell noted in the case of Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). For example, the Defendant Dean Timothy Rush knowingly claimed that the students of the Radio and TV Production class were frightened by the response made by Ms. Davis on January 12th 2018 unto the unwanted sexual misconduct of Mr. Crisler as to provide a valid cause or reason to expel Ms. Davis from attending the College. This wrongful act or omission of the Dean of Students not only resulted in a total loss of educational opportunities provided at Hinds toward this female Student, but damage to her reputation in the Community in which she reside. Justice Powell noted in the case of Ingraham v. Wright, 430 U.S. 651, 97 S. Ct. 1401, 51 L.Ed.2d 711 (1977) that "were it not for the common-law privilege permitting teachers to inflict reasonable corporal punishment on children in their care, and the availability of the traditional remedies for abuse, the case for requiring advance procedural safeguards would be strong indeed." Id. at 674, 97 S. Ct. at 1414. As the state never has a legitimate basis for inflicting physical sexual abuse on a child, no set of procedural safeguards whether available before or after such a violation would meet the requirements of due process. Justice Powell's reasoning in Ingraham supports this conclusion: "If the common-law privilege to inflict reasonable corporal punishment in school were inapplicable, it is doubtful whether any procedure short of a trial in a criminal or juvenile court could satisfy the requirements of procedural due process for the imposition of such punishment." Id. at 674 n. 44, 97 S.Ct. at 1414 n. 44 (citations omitted). See also, Parratt v. Taylor, 451 U.S. 527, 542-43, 101 S. Ct. 1908, 1916, 68 L.Ed.2d 420 (1981). See also Fee v. Herndon, 900 F.2d 804, 808 (5th Cir.1990); and Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243, 1245 (5th Cir.1984). Additionally, Justice Powell in Ingraham established a two-stage analysis of a student's right to be free from corporal punishment. See Ingraham, 430 U.S. at 672, 97 S.Ct. at 1413. First, one asks whether protected interests are implicated. Id. at 672-74, 97 S. Ct. at 1413-14. Second, one asks whether

the person who suffered the deprivation was accorded Due Process of Law. Id. at 674-82, 97 S. Ct. at 1414-18. At the second stage the existence of protective state and federal law undermines, rather than supports, the conclusion that a Due Process violation has occurred, whereas, only after recognizing a fundamental liberty interest do we look to state law to see if an infringement of that interest has occurred without Due Process. See Id. at 672, 97 S. Ct. at 1413. Therefore, the Defendant Hinds Community College, Dr. Clyde Muse and the Mississippi Department of Education investigation policies or procedures of alleged Student Conduct Disciplinary charges and Title IX Sexual Harassment Complaints of teachers- student / student-student do not comport with the requirements of the Administrative Procedures Act and/or Due Process of Law. The Fourteenth Amendment's Right to Procedural Due Process guarantees citizens the protection of adequate procedures before allowing a state or similar institution to deprive her or him of their property, life, or liberty interests protected by the Fourteenth Amendment which "may arise from the Constitution itself, or by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." See, e.g., Wilkinson v. Austin, 545 U.S. 209, 221 (2005); accord Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974). Particularly, in this action the Defendants Dean Timothy Rush,, Dr. Tyrone Jackson and Ms. Sharon Alexander who investigated and/or participated in the investigation of the Title IX Complaint intentionally denied Ms. Davis "a partial and unbiased investigation into the false student disciplinary charges filed against her to subdue the Sexual Harassment endured by her while being a student in the Radio and TV Production Class as set forth in *Exhibit "G"* attached hereto. See, e.g., Doe v. Columbia Univ., --- F. Supp. 3d ----, 2015 WL 1840402, at *1 (S.D.N.Y. Apr. 21, 2015). In this action, Ms. Davis concedes that an investigation was not launched by the Dean of Students or the Utica Campus Police into the false student conduct charges due to a previous 2004-2006 sexual harassment incident by Dean Rush that were brought up on January 12th

2018 that could be seen as another reason of why the Defendants Dr. Tyrone Jackson, Ms. Sharon Alexander and John Does 1-20 as the other Members of the Local Disciplinary/ Appeals Committee wrongfully found Ms. Davis to have committed the alleged student conduct offense (s). Nevertheless, "the severity of the penalty and/or the decision to initiate the proceeding by the Defendants Dean Timothy Rush and Ms. Sharon Alexander was affected by the [Plaintiff's] sex as a female and the reporting Student of Teacher-Student sexual harassment under Title IX of the Education Amendments Act of 1972. However, cases challenging a university or colleges disciplinary procedures generally proceed under either an innocence theory, *i.e.*, that the accused was wrongly found to have committed the offense, or a selective enforcement theory, *i.e.*, that regardless of guilt or innocence, "the severity of the penalty and/or the decision to initiate the proceeding was affected by the [Plaintiff's] gender." See, e.g., Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994). Page 67 of the Hinds CC 2018-19 Student Handbook provides under Subparagraph No. VI that an investigation of any reported student/student organization or club misconduct will be made before charges - disciplinary actions are initiated by the Dean of Students/Operating Dean/Designee. Further, that such disciplinary actions will be assigned to an Administrative Hearing officer/Local Disciplinary Committee by the Dean of Students/Operating Dean/Designee and notification will specifically inform the student/student organization or club.

<u>DENIAL OF APPEAL BY THE DISTRICT DEAN OF STUDENTS / DISCIPLINARY APPEALS COMMITTEE</u>

On January 29th 2018, the Plaintiff sought to Appeal the Local Disciplinary Committee's arbitrary decision to expel her from attending school at all of the Hinds CC Campuses as set forth in ***Exhibit "H"*** attached hereto. Subsequently, on the 7th day of February 2018 the District Dean of Students as the Defendant Dr. Tyrone Jackson or Appeals Disciplinary Committee denied Ms. Davis Appeal and decided to uphold the

decision of expulsion from attending all Hinds Community College Campuses as set forth in **Exhibit "I"**

attached hereto. Page 74 of the Jackson, Rankin, Raymond, Utica and Vicksburg Hinds Community Colleges

2018-19 Student Handbook provide as follows:

### IX. Appeals Process.

The student, group, or registered organization being disciplined may appeal a decision reached by a disciplinary committee or administrative hearing. A request for an appeal must be made in writing to the Dean of Students or Operating Dean within a period of three (3) working days from the date of notification. A residence hall student who appeals an expulsion, suspension or residence hall dismissal may be required to vacate the residence halls while the appeal is pending. An appeal must be based on one or more of the following reasons:

1. Due process rights were violated;
2. Inadequate evidence or new evidence became available; or
3. The sanction received was arbitrarily harsh or capricious.

The student, group, or organization being disciplined must detail in writing why they are appealing. Any student or group not submitting a written appeal by the appointed date forfeits any further consideration in this matter. The student or group members may be suspended from classes and all activities during the appeal process. The appeal will be reviewed by the District Appeals Committee, District Dean of Student Services or by an assigned administrative hearing officer.

The District Appeals Committee, District Dean of Student Services or administrative hearing officer will review the written documentation and other related materials, it will then grant or deny the appeal. The student will be notified in writing of the decision. Following the notification by the student, group, or organization of intent to appeal and pending the appeal meeting, any disciplinary action taken by the College shall be delayed unless the Dean of Students/Operating Dean has determined that the continued presence on campus of the charged student, group, or organization is deemed to present a danger to persons or property of the College or an ongoing threat of disrupting the operations of the College.

Case law is well settled that hearing officers are provided a presumption of impartiality unless a Plaintiff

is able to demonstrate that s/he have "display[ed] deep-seated favoritism or unequivocal antagonism that has

or would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). The Plaintiff

concedes that she was not accorded Due Process of Law during any step or stage of the false Student Conduct

Disciplinary Hearing Procedures due to the Title IX sexual harassment complaint she had file against the

Colleges Radio and TV Production Program Instructor. Furthermore, that since Ms. Sharon Alexander and the other Members of the Local Disciplinary Committee had an interest in the outcome of the Administrative Proceeding (s)., that her right (s) to Procedural-Substatiative Due Process of Law were intentionally violated by the Defendant (s) Dr. Tyrone Jackson, Dean Timothy Rush, Ms. Sharon Alexander and John Does 1-20 (i.e., the Members of the Local Disciplinary / Appeals Committee). According to Page 2 of the Hinds CC Due Process for Students Brochure, a student, student organization or club are supposed to have the right to Appeal any decision of the Local Disciplinary Committee ( based upon the criteria listed under the Appeal Section of the current Hinds CC Student Handbook) as set forth above and *Exhibit "B"* attachments. Specifically, the Plaintiff in this action was denied her right to a meaningful Appellate Review of the Local Disciplinary Committees arbitrary decision entered on January 29th 2018 to expel her from Hinds CC. More interest was shown by Ms. Sharon Alexander as the Schools Title IX Coordinator also involved with the enforcement of Student Conduct Disciplinary Proceedings toward the false Student Conduct charges in this action which evidences the willful intent to inadequately and/or not investigative the Title IX sexual harassment complaint filed by the Plaintiff against Mr. Timothy E. Crisler though well-grounded in law or fact. Generally, the amount of process due in University disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail. See, e.g., Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In Goss v. Lopez, the Supreme Court held that an informal give-and-take between a high school student and the administration afforded sufficient process preceding a temporary suspension. 419 U.S. at 584. The Court specified, however, that "[l]onger suspensions or expulsions for the remainder of the school

33

term, or permanently, may require more formal procedures." Id. Conversely, the Supreme court has held that "Due Process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." See, e.g., Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 158 (5th Cir. 1961). "[T]he interpretation and application of the Due Process Clause are intensely practical matters and . . . 'the very nature of Due Process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" Goss, 419 U.S. at 578 (alteration omitted) (quoting Cafeteria Workers v. McElroy, 357 U.S. 886, 895 (1961). "The nature of the hearing should vary depending upon the circumstances of the particular case." Dixon, 294 F.2d at 158. Here, the first, second and third factors are easily identified. On the other hand, Ms. Davis had a liberty interest in higher education that were not regarded to by the Defendants Dr. Tyrone Jackson, Dean Timothy Rush, Officer Percy Terrell, Ms. Sharon Alexander and John Does 1-20 on the dates in question. See, e.g., Univ. of Tex. Med. Sch. at Hous. v. Than, 901 S.W.2d 926, 929– 30 (Tex. 1995) (recognizing a liberty interest in graduate higher education under the Texas Constitution); accord Dixon, 294 F.2d at 157 ("The precise nature of the private interest involved in this case is the right to remain at a public institution of higher learning in which the Plaintiff were a students in good standing."). Accordingly, the arbitrary sanction of Corporal Student Punishment imposed by the Hinds Community Colleges Local Student Disciplinary Committee upon Ms. Davis on January 29th 2018 has a "substantial lasting impact on her personal life, educational opportunities and reputation in the community in which she resides and would be appropriately rescinded, reversed and/or negated to be ineffective by this Court under *Ex parte Young, 209 U.S. 123 (1908)* *via* the Fourteenth Amendment through Section 42 U.S.C. § 1983 of the United States Constitution; Section (s) 5 U. S. C. § 706 (2) (A-D) of the Administrative Procedures Act; and Section (s) 20 U. S. C. § 1681; 20 U. S. C. § 1682; 42 U. S. C. § 2000d–7(a)(1) of Title IX "collectively" referred to as the Education Amendments Act of

1972." See, e.g., Nelson v. Univ. of Tex. at Dall., 535 F.3d 318, 320 (5th Cir. 2008) and El-Bawab v. Jackson State

Univ., No. 3:15-CV-733-DPJ-FKB, 2018 WL 543040, at *3 (S.D. Miss. Jan. 24, 2018) (finding former University

president was "the only individual defendant who ever had authority to grant the prospective relief" plaintiff

sought—"an immediate promotion to full professor"). Notably, since the offensive sexual harassment of Mr.

Crisler is what precipitated the classroom incident on January 12th 2018., the Student Conduct Hearing or

Proceedings should have been different as to accord Due Process of Law and to protect the Liberty Interest

or Property Right (s) of this female Student. See, e.g., Doe v. Brandeis University, 177 F. Supp. 3d 561 (D. Mass.

2016) where the Court held that each case must be decided on its own merits and according to its own facts.

In that action., a college student were to be marked for life as a sexual predator, and Judge F. Dennis Saylor

IV said it were reasonable to require that he be provided a fair opportunity to defend himself and an impartial

arbiter to make a decision." Similar to the facts of this case, the Defendants Dean Timothy Rush, Dr. Tyrone

Jackson, Ms. Sharon Alexander and John Does 1-20 has marked this Student with a erroneous criminal record

in her educational background, to the extent, her response to the sexual harassment and verbal abuse on the

part of Mr. Crisler were arbitrarily considered to be a threat to his safety and the participants of the Radio and

TV Production class on the date in question. Id. The Plaintiff and other Students of the Hinds Community

College Campuses ha[s] a liberty interest in higher education [and] [t]he sanctions imposed by the Local

Disciplinary Committee could have a 'substantial or long lasting impact on Ms. Davis personal life, educational

and employment opportunities, and reputation in the community in which she resides if not negated to be

invalid and/or unconstitutional by this Court.'" Id. (quoting Doe v. Cummins, 662 F. App'x 437, 446 (6th Cir.

2016). The false Student Conduct or Disciplinary Charges initially brought against Ms. Davis by the Defendant

Dean Timothy Rush, and then Ms. Sharon Alexander allegedly by or on behalf of Mr. Timothy E. Crisler were

instituted after the Title IX Sexual Harassment Complaint were filed against the Radio and TV Production

Instructor with the Raymond Campus HR Department on January 12th 2018." Dixon, 294 F.2d at 158. Under

Title IX, Section (s) 20 U.S.C. § 1681 (a), a hostile environment was created by the Defendant Timothy E. Crisler

as the Utica Hinds Community College's Radio and TV Production Broadcasting Instructor who used his

position of power or authority to sexually harass, demean and offend Ms. Davis. Any reasonable female victim

of the severe and pervasive sexual harassment or abuse endured by the Plaintiff while being in the Radio and

TV Production class on the dates in question, would have responded in fear or anger. See, e.g., Page 7 of the

Hinds CC Title IX Sexual Misconduct Policy Definitions (Hostile Environment Caused by Sexual Harassment).

Thus, Ms. Sharon Alexander also as the Colleges employee over Student Conduct or Disciplinary Proceedings

had prior knowledge that the Plaintiff sought to transfer the Student Conduct hearing from the Utica Hinds

Campus due to interest, prejudice and/or bias existing thereon on the part of the Defendant (s) Dean Timothy

Rush-Officer and Officer Percy Terrell. Summarily, Ms. Sharon Alexander were the authority figure at the

College who received and granted the Plaintiffs request on January 22nd 2018 as set forth in *Exhibit "J"*

attached hereto. See also, e.g., Nash v. Auburn Univ., 812 F.2d 655, 665-66 (11th Cir. 1987). As such, Ms.

Alexander's conflicting role as the Colleges Title IX Coordinator and employee over student conduct willfully

deprived this female student as the victims of severe teacher-student Sexual harassment at the Utica Hinds

CC Campus out of fundamental fairness and other immunities or guarantees secured by the Due Process

Clause of the Fourteenth Amendment to the United States Constitution. Due Process of Law required Ms.

Alexander to recuse herself from presiding as a Member of the Local Disciplinary Committee during the

erroneous Student Conduct hearing on January 29th 2018 *Sua Sponte*, to the extent, her violation of Ms. Davis

and other female students right to Due Process were intentional that the Defendants Hinds Community

College Dr. Clyde Muse and the Mississippi Department of Education knew that the Schools Hearing Panel or Local Disciplinary Committee were not complying with her and/or his obligation to recuse from the alleged Student Misconduct Proceedings when required by Law. The Defendant Sharon Alexander on January 23rd 2018 (*i.e.*, the date originally assigned to hear the false Student Conduct charges) asked the Plaintiff of any witnesses from the Radio and TV Production class on January 12th 2018 that she would elect to appear at the Hearing rescheduled for January 29th 2018 at the Raymond Campus in response to the false Student Conduct charges prepared by Dean Timothy Rush and faxed to her on the same with the willful intent to influence and/or persuade Mr. Johnathan Bradford, James Marcus and other participants of the class who witnessed the incident on January 12th 2018 to withhold exculpatory evidence or testimony surrounding the response made by this female student unto the unwanted sexual misconduct of the Radio and TV Program Instructor and to present testimony or evidence in his favor that would ultimately lead to Ms. Davis expulsion from the College and ignoring -conclusion of the Title IX Teacher – Student sexual harassment Complaint against Mr. Timothy E. Crisler or noncompliance with Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681-88 which are violative of the Due Process Clause of the Fourteenth Amendment. Id. It is a fundamental requirement that a hearing must be accorded before an impartial decision maker." University disciplinary hearings, without a doubt require that the student can plead her or his story to an unbiased tribunal. There is a pattern or practice of the Defendant Dean Timothy Rush and Ms. Sharon Alexander wrongfully accusing and/or allowing false Disciplinary charges to be instituted by the College Instructors or other employees who sexually harass or offend at the School and then providing a biased and/or impartial hearing body to hear the same due to an interest in the outcome thereof, which creates the appearance of bias toward the sex of the College participants under Title IX of the Education Amendments Act of 1972. As a consequence, the arbitrary of the

Defendants Dr. Tyrone Jackson, Dean Timothy Rush, Ms. Sharon Alexander and John Does 1-20 on January

29th 2018 should be reversed and/or negated to be invalid by this Court and the Plaintiff allowed to remit

back into her educational goal or need at Hinds Community College or any another 2-4-year College of her

choice in good moral standing. For example, In Nash, several students alleged that the university violated their

rights to Due Process during their Administrative Hearings because the University failed to provide an

impartial hearing body. The Eleventh Circuit explained that "an impartial decision maker [i]s an essential

guarantee of Due Process." The students alleged a constitutional Due Process violation; they alleged that they

were deprived of an impartial tribunal. For instance, in Center for Participant Education v. Marshall, 337 F.

Supp. 126 (1972) a Federal District Court left some room to contest the impartiality of a tribunal. When

allegations of prejudice and fundamental unfairness were premised on the school's seemingly conflicting roles

as both prosecutor and adjudicator (the same is the case here), the Court stated that unfairness was not

evident "in the absence of a showing of other circumstances such as malice or personal interest in the outcome

of the case." Id. (quoting Jones v. State Bd. of Educ., 279 F. Supp. 190, 200 (M.D. Tenn. 1968). Therefore, there

has to be evidence demonstrating that the tribunal member was incapable of impartial application of Rules

and Regulations governing the hearing or that the member "observed, investigated, or made [some]

prehearing decisions" about the accused. Id. See also, Winnick v. Manning, 460 F.2d 545, 548 (2d Cir. 1972).

Consequently, the Defendant Hinds Community College, Dr. Clyde Muse and the Mississippi Department of

Education Student Conduct Appeal policies or procedures are discriminatory towards those accused of

Student of Misconduct upon the basis of sex. Nevertheless, are also inconsistent with the requirements of the

Administrative Procedures Act and/or Due Process of Law that was known or should have known of these

responsible Defendants or Authorities of the Hinds Community College Campuses. See, e g., Cohen v. Perales,

412 F. 2d 44, 50 (5th Cir 1969) (quoting Administrative Procedures Act 5 U. S. C. § 556 (b) (2000). It is the Plaintiffs and other female students of the Hinds CC Campuses Fourteenth Amendment right to present ones case before an independent, disinterested, unbiased or non-prejudiced Local Disciplinary Committee or Student Administrative Hearing Panel, to the extent, the Defendants Dean Timothy Rush, Dr. Tyrone Jackson, Ms. Sharon Alexander and John Does 1-20 (as the Members of the Local Disciplinary / Appeals Committee) willfully violated Due Process as to deny the Plaintiff and other reporting female Students of Teacher-Student Sexual harassment right to continue ones educational need (s) or goal (s) at Hinds amounting to intentional discrimination upon the basis of the Students sex under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-88.

### 5.
### (CAUSES OF ACTION)

### (I)
### COUNT ONE: VIOLATIONS OF TITLE IX
### *PER SE* SEXUAL DISCRIMINATION, SEXUAL HARASSMENT,
### HOSTILE SCHOOL ENVIRONMENT AND RETALIATION CLAIM (S)

The Plaintiff incorporates paragraphs 1 through 4 above by reference and reasserts the same as if republished here. Re-collectively, Title IX of the Education Amendments of 1972 provides, in relevant part, that:

{T}hat no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial Assistance.

The Defendant Hinds Community College receives federal funding. Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 466 (1999). There is an implied private cause of action for the violation of Title IX described herein. Both the U. S. Department of Education and the Department of Justice have promulgated Regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and

equitable resolution of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (emphasis added). Such prohibited actions include all forms of sexual and gender-based harassment, including acts of verbal, non-verbal or physical aggression, intimidation or hostility based on sex or sex-stereotyping. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord Due Process to both parties involved..." The "prompt and equitable" procedures that a school must implement to "accord Due Process to both parties involved" must include, at a minimum:

  **i.** "Notice ... of the procedure, including where complaints may be filed;"
  **ii**. "Application of the procedure to complaints alleging [sexual] harassment...;"
  **iii**. "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence;"
  **iv.** "Designated and reasonably prompt timeframes for the major stages of the complaint process;" and,
  **v.** "Notice to the parties of the outcome of the complaint..."

The Defendant Ms. Sharon Alexander and Dr. Tyrone Jackson did not accord the Plaintiff Due Process of Law while allegedly conducting an investigation into the Title IX sexual harassment Complaint lodged with Hinds Community College on January 12th 2018 against Mr. Timothy Crisler by this female Student. The Defendant Hinds CC, the Mississippi Department of Education and Dr. Clyde Muse as the Colleges President were under an obligation under Title IX to make sure that the employees of Hinds Community College responsible for coordinating Title IX's enforcement and its procedures were "adequately trained" as to what misconduct constitutes sexual harassment or abuse and a complaint of sexual harassment, violence or assault to be investigated and promptly responded to in accordance with Title IX and its requirements of disciplinary procedures or actions at the School or College Campuses. See, e.g., 34 C.F.R. § 106.8 (a), Code Federal

40

Regulation. Had the Defendant Dr. Tyrone Jackson and Ms. Sharon Alexander been reasonably trained, supervised or disciplined upon the fundamental fairness or impartial investigation of Title IX Sexual harassment complaints, then they would have not been deliberate indifferent to the known or should have known of obvious need to protect the educational needs or goals of the Plaintiff and other female students under the components of the Procedural and Substantive Due Process Clause of the Fourteenth Amendment while being enrolled in School at Hinds Community College. See, e.g., Section (s) See 34 C.F.R. § 106.8 (b) and 42 U.S.C. § 2000d of the United States Constitution, et seq. Title IX regulation, 34 C.F.R. § 106.9, requires a University to notify all parties that, Title IX, does not discriminate on the basis of sex in the education programs or activities that it operates. The notice must state: that the requirement not to discriminate in the recipient's education programs and activities extends to employees and students; that inquiries concerning the application of Title IX may be referred to the Title IX Coordinator or employee designated pursuant to 34 C.F.R. § 106.8(a); and the name, office address, email address, and telephone number of the designated coordinator. Had the Defendant (s) Hinds CC, the Mississippi Department of Education and Dr. Clyde Muse provided and/or implemented adequate training, supervision and discipline policies, procedures or other ensuring methods over the Hinds Community Colleges Title IX Coordinators investigation process of Title IX Complaints; then the sexual harassment at the school and its discriminatory effect toward this reporting Students sex and others wouldn't have occurred. The Hinds Community College Title IX Coordinators and other personnel at the School charged with the enforcement of Title IX were so inadequately trained and/or trained in a biased or prejudiced way as to violate a reporting Student of Teacher-Student Sexual Harassment Due Process of Law Right (s). See, e.g., CM/ECF Doc No. 75 in the case of John Doe v. the University of Mississippi, et al., Cause No. 3:16-CV-63-DPJ-FKB, filed within the United States District Court for the SDM

41

(ND) (July 24th 2018). The Title IX investigation allegedly conducted by the Schools Title IX Coordinators in this action were flawed not only because it was biased, but because the initiating of false student Conduct or Disciplinary charges by Dean Timothy Rush, Officer Percy Terrell and Ms. Sharon Alexander allegedly on the part of Mr. Timothy E. Crisler as to have an adverse effect toward the Teacher-Student Title IX sexual harassment Complaint and retaliate against the Plaintiff by expelling her from the College on January 29th 2018. Title IX prohibits a person, on the basis of sex, gender, or gender stereotyping, from being excluded from participation in any educational opportunity, program or activity for which s/he is otherwise eligible or to be discriminated against with regard to participation in the same, or receiving the benefits and privileges of such eligibility. Motivated by gender or sex based bias, the Defendant (s) Ms. Sharon Alexander and Dr. Tyrone Jackson as the Colleges Title IX Coordinators discriminatorily conducted a putative investigation into this Teacher-Student sexual harassment incidents occurrence from January 8th 2018 to January 12th 2018 (*i.e.,* in a manner that was biased against Ms. Davis as a student who were offensively sexually harassed and severely humiliated in front of the participants of the Radio and TV Production class by Mr. Timothy E. Crisler on the dates in question. From the outset, the Defendant (s) Ms. Sharon Alexander and Dr. Tyrone Jackson biased and/or impartial investigation (circumventing the required Title IX Coordinator oversight of the same and the resolution of the Complaint pursuant to a Title IX-Compliant ant procedures) was highly improper and demonstrated an inherent bias and predetermination of guilt toward this female Student who were wrongfully accused of Student Misconduct that were instituted by the Defendant (s) Dean Timothy Rush, Ms. Sharon Alexander and Officer Percy Terrell allegedly on behalf of Mr. Timothy E. Crisler. The Defendant (s) Dean Timothy Rush and Ms. Sharon Alexander also being responsible for Student Conduct in this action acted as an advisor and/or advocate toward Mr. Timothy E. Crisler by proceeding with the unwarranted Student

Conduct or Disciplinary proceedings as to inflict corporal punishment (s) upon the Plaintiff that were fanciful,

arbitrary or capricious, despite the video evidence of record substantiating that a hostile environment were

created in the Radio and TV Production Class by Mr. Timothy E. Crisler so sufficiently severe or abusive as to

cause a disruption or precipitate an angrily or other hurtful response by a reasonable female victim of the

same unwanted sexual misconduct, insults or demeaning remarks of a sexual nature as humiliation –

retaliation for not showing any intimate interest in the Utica Radio and TV Production Instructor. There was

no investigation conducted into the false Student Conduct or Disciplinary Charges by the Defendants Dean

Timothy Rush, Ms. Sharon Alexander or Officer Percy Terrell during any stage of the Schools grievance

procedure (s), to the extent, the hearing before the Defendant Ms. Sharon Alexander and John Does 1-20 as

the other Members of the Local Disciplinary / Appeals Committee were slanted in favor of Mr. Crisler, and his

allegations were taken of face-value, though clearly unsupported and contradicted by the video evidence in

this action. Section IV Procedure to file a Student Conduct Report., Page 67 of the Hinds CC 2018-19 Student

Handbook provides:

> {T}hat in the case of a classroom incident, the instructor may require that the student leave class and
> not return subject to an investigation of the matter and a decision to be made by the proper authorities
> (Dean of Students/Operating Dean) regarding disposition of the incident. During this process, not to
> exceed one week of classes or the equivalent, the student will not return to class. All such required
> absences will be excused if the student does not exceed excessive absences.

The Defendant (s) Dr. Tyrone Jackson and Ms. Sharon Alexander as the Schools Title IX Coordinators

who were also charged with investigating the Title IX Complaint in this action., were deliberately indifferent

to her and/or his obligations under Title IX and its procedures (including the investigatory and disciplinary

procedures) that applied to the sexual harassment complaint filed by this female Student and others of the

Utica Hinds Community College Campuses. Such deliberate indifference included the failure to investigate

and hold disciplinary proceedings in accordance with Title IX when the same were mandatory. The same is true with regard to the false Student Conduct or Disciplinary Charges, to the extent, the Defendant (s) Ms. Sharon Alexander, Dean Timothy Rush and Officer Percy Terrell failed to launch an investigation into the false Student Conduct charges that were instituted and/or provoked by Dean Timothy Rush with willful intent to ignore the sexual harassment of Mr. Timothy E. Crisler and retaliate toward the Plaintiff for including in the Complaint sexual harassment on the part of him on January 12th 2018; that she endured by Dean Timothy Rush as the Utica Campus Dean of Students within the 2004-06 Calendar Year (s) – that is strictly prohibited under Title IX and the Schools Title IX Sexual Misconduct or Harassment Policy (ies). Williams v. Bd. of Regents, 477 F.3d 1282, 1296 (11th Cir. 2007) (holding that Davis requires plaintiffs to "allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the Plaintiff to further discrimination," an element not present in pleading deliberate indifference in Municipal-Liability cases). Such retaliation by the Defendants Dr. Tyrone Jackson, Officer Percy Terrell, Mr. Timothy E. Crisler, Ms. Sharon Alexander and John Does 1-20 for this female Student having reported Title IX teasher-Student sexual harassment at the School is also strictly prohibited by Title IX and is a violation of Title IX under the Education Amendments Act of 1972. Section III. Authority for Enforcement., Page 66 of the Hinds Community Colleges 2018-19 Student Handbook in pertinent part provides:

> {T}hat the Dean of Students/Operating Dean is primarily responsible for the enforcement of student conduct. This authority is delegated to the Dean of Students/Operating Dean by the appropriate vice president via the President of the College, who has the ultimate responsibility for student conduct subject only to review by the Board of Trustees. The Dean of Students/Operating Dean may, at their discretion, assign a student conduct case to the local Student Conduct Committee.

Furthermore, Section V. Criminal Investigation., Page 67 of the Hinds Community Colleges 2018-19 Student Handbook in part provides:

{T}hat the Campus Police Department serves as the primary investigation agent of the College on matters requiring investigation. This department is staffed with professionals who have constabulary authority under the laws of the State of Mississippi. In College operated residence halls the Resident Hall Directors, Resident Assistants and Director of Housing perform investigation duties and work jointly with Campus Police and the Dean of Students/Operating Dean. All employees are encouraged to teach students good behavior and to request investigation assistance and/or to file a disciplinary action report when the situation merits further action.

The facts or circumstances of the alleged Student Misconduct Charges should have prompted an investigation by the Defendant Dean Timothy Rush, Ms. Sharon Alexander and Officer Percy Terrell with regard to the truthfulness or accuracy of the same, but didn't with the willful intent on their part to wrongfully accuse the Plaintiff of committing Acts of Crime or Student Misconduct that would warrant a Sanction of such severity, through the use false-inaccurate reports prepared by the Students of the Radio and TV Production class in support of the same that would present the Plaintiff as a danger to herself and others while on the property of Hinds and ultimately lead to expulsion from the College. The U.S. Court of Appeals for the Sixth Circuit held in the case of Doe v. Baum, 903 F.3d 575 (6th Cir. 2018): {T}hat "if a Public University has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder." The Defendant Dean Timothy Rush and Officer Percy Terrell were biased against the Plaintiff in so many ways which creates an environment at the Utica Hinds CC Campus, of where an Student wrongfully accused of Misconduct is fundamentally denied Due Process of Law by being erroneously prosecuted and/or persecuted without an investigation into allegations of Student Misconduct, and held under a presumption of guilt instead of innocence. Matusow v. U.S.A., 229 F.2d 335 (5th Cir. 1956). Thus, both of these Defendants, including Ms. Sharon Alexander were overly biased in favor of the Radio and TV Production Instructor in a number of ways, such as by implying that the existence of witnesses testimony of the Radio and TV Production class on January

45

12th 2018 withhold exculpatory details regarding the incident and testify falsely before the LDC through the use of un-notarized reports as to what occurred, in order to undermine the integrity of the Title IX sexual harassment Complaint against Mr. Timothy E. Crisler detailing sexual misconduct of Dean Timothy Rush while previously attending the Utica Hinds Campus within the 2004-06 calendar." Doe v. University of Mississippi, No. 3:18-cv-00138 (S.D. Miss. Jan. 16, 2019). The Plaintiffs right to a fair and impartial hearing before the Local Disciplinary Committee were also violated through such a one-sided, biased and unfair procedure of the Title IX sexual harassment Complaint by the Schools Title IX Coordinator Ms. Sharon Alexander, Dr. Tyrone Jackson and Dean Timothy Rush who conducted a hearing on the false student conduct charges first as to deprive this female Student and others out of Due Process / Equal Protection of the Law *via* the Due Process Clause of the Fourteenth Amendment. Consequently, the Defendant Timothy Rush wrongfully retaliated against Ms. Davis by instituting or proceeding with false student disciplinary charges and refusing to investigate the truthfulness or accuracy of the Coded of Conduct allegedly violated while in the Radio and TV Production class. Re-collectively, Page 66 of the Hinds CC 2018-19 Student Handbook, Article III of the Student Conduct and Disciplinary Procedures in pertinent part provides that the Dean of Students/Operating Dean is primarily responsible for the enforcement of student discipline. Further, that this authority is delegated to the Dean of Students/Operating Dean by the appropriate Vice President *via* the President of the College, who has the ultimate responsibility for student discipline subject only to review by the Board of Trustees. The Dean of Students/Operating Dean may, at their discretion, assign a disciplinary case to the local Disciplinary Committee. Accordingly, the retaliatory Misconducts of the Defendants Dean Timothy Rush and Officer Percy Terrell toward this female Student for having complained of previous sexual harassment incidents on the part of Dean Timothy Rush at the Utica Hinds Campus is also strictly prohibited by Title IX and is a violation of Title

46

IX. The described unconstitutional acts of these two Defendants directly and/or proximately caused the Plaintiff and other female Students at the College to suffer a total loss of educational opportunities, and other Constitutional harms such as damage to one's bodily integrity, person, liberty, property and other rights. See, e.g., Akers v. Hinds Community College, Southern District of Mississippi (Jackson Division), Cause No. mssd-3:2008 -cv-00161 or Cause No. 3:08-cv-00161-TSL-FKB; Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999); and Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 639 (1999) (citing Cannon, 441 U.S. 607 and Franklin v. Gwinnett Cty. Public Schs., 503 U.S. 60 (1992). The Defendants Dr. Tyrone Jackson and Ms. Sharon Alexander deliberate indifference to investigate the Title IX Complaint of this female student detailing severe, offensive, persistent and pervasive sexual harassment of the Radio and TV Production Broadcasting Instructor on the dates in question which warranted immediate action, not only created but thereby subjected this female students and others to further sexual harassment at the School creating a hostile school environment not conductive of learning. Estate of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982, 995 (5th Cir. 2014) (quoting Davis, 526 U.S. at 650).

(II)

### COUNT TWO: VIOLATIONS OF SECTION 42 U.S.C. § 1983 *PER SE MONELL* INADEQUATE TEACHER-STUDENT SEXUAL HARASSMENT/RETALIATION TRAINING, SUPERVISION AND DISCIPLINE POLICY CLAIM (S)

The Plaintiff re-incorporates paragraphs 1 through 5 (I) above by reference and reasserts the same as if republished here., except *Monell* has held that local governments are not liable for an injury solely because they employ a tortfeasor: That, it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 42 U.S.C. § 1983. See also, e.g., 42 U. S. C. § 1981 of the United States Constitution. The Defendant Dr. Tyrone Jackson, Ms. Sharon Alexander as the individual over

Student Government Association and the Mississippi Department of Education were the "Official Policy Makers" with regard to the prevention of Sexual Harassment or Misconduct at the Hinds Community College Campuses or other appropriate persons with authority under Section 20 U.S.C. § 1682 to take corrective action as to end Teacher-Student and other employees Sexual harassment at the Hinds. An "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination. The responsible Supervisory Defendants Hinds Community College, the Mississippi Department of Education and Dr. Clyde Muse willful failure (s) to train, supervise and discipline Employee-Teacher/Student Sexual harassment – retaliation through constitutional policies, practices or customs were the "moving force" behind the constitutional violations and deprivation to the Plaintiff *via* the First, Fourth and Fourteenth Amendments to the United States Constitution. The Fifth Circuit Court of Appeals has held that "in order to establish supervisory liability for constitutional violations committed by subordinate employees, Plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." Wernecke v. Garcia, 591 F.3d 386, 401 (5th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 254 (5th Cir. 2005). "'[D]eliberate indifference' to the 'known or obvious consequences' of a hiring decision can amount to a constitutional violation on the part of the decision maker." Gros v. City of Grand Prairie, 209 F.3d 431, 433 (5th Cir. 2000) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997). The false Student Conduct charges allowed to be instituted by the Dean Timothy Rush, Officer Percy Terrel or Mr. Timothy E. Crisler against Ms. Davis, not only ignored the Teacher -Student Sexual Harassment Complaint filed by this female Student, but willfully condoned sexual harassment by increasing other incidents of sexual misconduct or abuse by Instructors at the school toward Students while being

48

enrolled at Hinds. Summarily, the Plaintiff were familiar with Dean Timothy Rush before the Spring 2018 Semester because she had previously attended Hinds in Utica within the 2004-2006 Calendar years and attained an Associate's degree in Psychology. During this time, the Defendant Timothy Rush would tell Campus Police or Officers "Officer Percy Terrell" to tell Ms. Davis to come to his office when he had saw her on campus. The Plaintiff would think that it was something school related and went to the Deans Office when informed by Campus Police. Dean Timothy Rush would say that he wanted nothing when the Plaintiff appeared and make sexist comments towards Ms. Davis. This occurred not only in the Dean of Students Office but while Ms. Davis was on the Utica Campus. Notably, the Defendant Mr. Timothy E. Crisler on January 12th-29th 2018 anticipated that his school relationship with Ms. Davis would become private and got sexually offensive towards her when she showed no interest in him and made positive remarks towards James and some more male participant of his Radio and TV Production Class that were perceived by him to be intimate in nature. The sexual harassment of female Students in the Radio and TV Production Program at the Utica Hinds Campus were reasonably foreseeable by the responsible Supervisory Defendants named in this action because participants of the class would undergo long distance trips along with the Programs Instructor and male students in the class for required assignments and others to earn points. There is a direct and/or proximate "causal connection" between the responsible Defendants willful failure to train, supervise and discipline Teacher-Student and other employee's Sexual harassment at the Hinds Community College Campuses through adequate policies - procedures and the subsequent injuries and damages sustained to the Plaintiff. It were well established and unambiguous law at the time of the events described in this Complaint, that the Plaintiff had a constitutional right and/or guarantee to be free from the unconstitutional acts or omissions of the Defendants employees as implicated by the First, Fourth and Fourteenth Amendment to the

49

United States Constitution through Section 42 U.S.C. § 1983 and Title IX of the Education Amendments Act of

11972, 20 U.S.C. §§ 1681-88, to the extent, s/he knew or should have known that her and/or his outrageous

misconducts violated the Plaintiffs Substatiative - Procedural Due Process Right (s) *via* the Fourteenth

Amendment, Right to be free from illegal searches - seizures *via* the Fourth Amendment and First Amendment

Right to the free exercise and/or enjoyment of freedom of speech and redress of grievances as protected and

implicated in the same. See, e.g., Bell v. Itawamba Cnty. Sch. Bd. 799 F.3d 379 (5th Cir. 2015); Doe v. Taylor

Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir. 1994); Jefferson v. Ysleta Independent School District, 817 F.2d 303

(5th Cir. 1987); Walton v. Alexander, 44 F.3d 1297 (5th Cir. 1995) (en banc), modifying 20 F.3d 1350 (5th Cir.

1994); Taylor, 15 F.3d at 451-452 (citing Fee v. Herndon, 900 F.2d 804, 808 (5th Cir. 1990) (quoting Woodard v.

Los Fresnos Indep. Sch. Dist., 732 F.2d 1243, 1246 (5th Cir. 1984); Cunningham v. Beavers, 858 F.2d 269, 270,

272 (5th Cir. 1988) and Ingraham v. Wright, 430 U.S. 651 (1977). The Plaintiffs right to bodily integrity, liberty

and property interest rights under the substantive Due Process components of the Fourteenth Amendment,

and the Defendants Dr. Clyde Muse, Dr. Tyrone Jackson, Dean Timothy Rush, Mr. Timothy E. Crisler, Officer

Percy Terrell and Ms. Sharon Alexander had a duty to refrain from acts or omissions that would violate well

"clearly established" Law at the time of these events giving rise to the causes of actions cited herein. See, e.g.,

Stem v. Ahearn, 908 F.2d 1, 5 (5th Cir. 1990), cert. denied, 498 U.S. 1069, 111 S. Ct. 788, 112 L. Ed. 2d 850 (1991).

The aforementioned unconstitutional acts or omissions of the Defendants Dr. Clyde Muse, Dr. Tyrone Jackson,

Dean Timothy Rush, Mr. Timothy E. Crisler, Officer Percy Terell, Ms. Sharon Alexander and John Does 1-20

while on the Utica-Raymond Campuses of Hinds Community College were taken under color of law,

objectively unreasonable and occurred exclusively within the scope and/or course of her and/or his

employment or duties with the school giving rise to individual liability under Section 42 U.S.C. § 1983. See,

50

e.g., Pierce v. Smith, 117 F.3d 866 (5th Cir. 1997); Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990) and Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir. 1994) where the Court of Appeals for the Fifth Circuit held that the "contours" of a student's substantive due process right to be free from sexual abuse and violations of her and/or his bodily integrity were clearly established in 1987. In 1987 the Fifth also stated that it was clearly established in 1985 that the Due Process Clause protects a schoolchild from being lashed to a chair for the better part of two days for "instructional purposes." Id. The Defendant Mr. Timothy E. Crisler ingeniously used his position as the Radio and TV Broadcasting Instructor on the dates in question to influence and/or bring about a private relationship with the Plaintiff and retaliated against Ms. Davis when she did not show any intimate interest in his sexual advances (i.e., realized that she had not joined the Radio and TV Program to look up in his ----- face). The Plaintiffs response to the unwanted sexual harassment of Mr. Crisler on January 12th 2018 before leaving the Radio and TV Production Class were aimed at Mr. Crislers anticipation that his Teacher-Student relationship with her would become private and/or intimate in nature. Nevertheless, the Defendants Dr. Tyrone Jackson, Dean Timothy Rush, Ms. Sharon Alexander and John Does 1-20 as the Members of the Local Disciplinary Committee ingeniously used their position of authorities as to deprive this female student and others attendees of Hinds out of the constitutional guarantees or immunities afforded by the First, Fourth and Fourteenth Amendments to the United States Constitution through 42 U.S.C. § 1983 that the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education had a duty to prevent but deliberately failed to exercise a reasonable degree of care despite the or obvious risk of violating a student's First, Fourth and Fourteenth Amendment Rights. Id. See also, Malley v. Briggs, 475 U.S. 335, 341 (1986) and Fee v. Herndon, 900 F.2d 804 (5th Cir. 1990). Had the Defendants Title IX Coordinators and other employees been reasonably trained as to what acts or omissions of the College Campus employees constitutes

sexual harassment and thus creates a hostile school environment not conductive of learning., then the constitutional injuries and other damages sustained to the Plaintiff in this action wouldn't have occurred. This is not a single or isolated incident of teacher-student sexual harassment and retaliation by the Defendants employees at the school, to the extent, "the need for more or sufficient training, supervision and discipline [of employee/teacher-student sexual harassment] and retaliation against reporting Students is so obvious through the use of constitutional policies, practices or customs, and the inadequacy of them so likely to result in intentional deprivations of a Students First, Fourth and Fourteenth Amendment rights through 42 U.S.C. § 1983 and Title IX of the Education Amendments Act 1972, 20 U.S.C. § 1681-88. For example, in Doe v. Hillsboro Independent School District, 209. 81 F.3d 1395, 1398 (5th Cir. 1996) (custodian raped school child) the Fifth Circuit held:

> "{T}hat when a school employee is rightfully on the premises, during school hours, ostensibly performing her and/or his assigned duties, and-predictably-finds her or himself alone with a student, constitutional deprivations perpetrated by that school employee on the person of that student might be found to have occurred in the course of employment.

**(The First Amendment Through Section 42 U.S.C. § 1983)**

{I}t provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. The aforementioned statement (s) unto Mr. Timothy E. Crisler by this female Student on January 12th 2018 before leaving the Radio and TV class were due to the severe and pervasive sexual harassment of its Instructor towards Ms. Davis which created a hostile school environment not conductive of learning for the Plaintiff. The Plaintiffs response to the derogatory sexual acts and gestures of Mr. Timothy E. Crisler were an matter of the publics concern and/or student body governing Hinds Community College and therefore protected by the First Amendment to the

52

United States Constitution. Bell v. Itawamba Cnty. Sch. Bd. 799 F.3d 379 (5th Cir. 2015)(en banc). The Defendant

(s) Dr. Tyrone Jackson, Mr. Timothy Rush, Ms. Sharon Alexander and John Does 1-20 as Members of the Local

Disciplinary Student Conduct Committee knew or should have known that the Plaintiffs Statements and right

to file a Title IX Teacher-Student sexual harassment Complaint were Protected by the First Amendment to the

United States Constitution, to the extent, this female Student would have never been arbitrarily expelled from

Hinds Community College as retaliation and for filing a Teacher-Student Title IX sexual harassment Complaint

against Mr. Timothy E. Crisler had these employees been reasonably trained, supervised and disciplined as to

what acts or omissions of the College Campus employees constitutes sexual harassment and thus created a

hostile school environment not conductive of learning for the Plaintiff and other female Students of the Hinds

Community College Campuses. This is not a single or isolated incident of teacher-student sexual harassment

and retaliation by the Defendants employees at the school, to the extent, "the need for adequate training,

supervision and discipline [of employee/teacher-student sexual harassment] and retaliation toward reporting

and/or complaining Students of Title IX sexual harassment at the School is so obvious through the use of

constitutional policies, practices or customs, and the inadequacy of them so likely to result in the intentional

deprivations or violations of a Students First Amendment Right, whereas, the response made by Ms. Davis on

January 12th 2018 unto the severe and pervasive verbal abuse and harassment of a sexual nature by the Utica

Hinds Radio and TV Production Broadcasting Instructor were of the public's concern and/or student body

governing the Hinds Community College Campuses that were known of by the responsible Defendants

employees on the dates in question. Doe v. Hillsboro Independent School District, 209. 81 F.3d 1395, 1398 (5th

Cir. 1996) (custodian raped school child). The United States Supreme Court in the case of Connick v. Myers,

461 U.S. 138, 147–50 (1983) and Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968) stated that in order o

establish a § 1983 claim for violation of the First Amendment right to free speech, they must show that (1) they were disciplined or fired for speech that is a matter of public concern, and (2) their interest in the speech outweighed the university's interest in regulating the speech.**12** The first question, asking whether the professor's speech is protected as a matter of public concern, is a question of Law.. The Plaintiff's interests on January 12th 2018 while in the Radio and TV Production Program and speaking out against the sexual harassment, verbal insults, gestures or abuse of a sexual nature by Mr. Timothy E. Crisler outweighed the College's interests in regulating the protected speech which is a factual determination conducted under the well-known *Pickering[-Connick]* balancing test. If the Plaintiff's interests in the prohibited speech outweigh the College's interests, then the Plaintiff's First Amendment rights have been violated (such is the case here).**11** The aforementioned Defendants also had engaged in a conspiracy to wrongfully expel the Plaintiff from attending Hinds by assigning an biased – impartial Local Student Conduct Disciplinary Committee to wrongfully expel this reporting Student of Title IX sexual teacher-student and other employees harassment on January 29th 2018 as retaliation for having engaged in such protected speech and redress of grievances arising out of a sexually hostile and offensive school environment not conductive of learning in the Utica Hinds Radio and TV Production Programs by its Instructor "Mr. Timothy E. Crisler" which is also protected and strictly prohibited under Title IX of the Education Amendments Act of 1972), et seq. See, e.g., Widmar v. Vincent, 454 U.S. 263, 268-69 (1981) ("with respect to persons entitled to be there, our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities"). There is a unconstitutional Student Freedom of Speech training, supervision and discipline Policy of the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education existing at the Hinds Community

---

11 "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community."17

College Campuses which constitutes a pattern, practice or custom which directly and/or proximately caused the constitutional harm (s) and other damages to the Plaintiff on the dates in question. Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003). The Defendant Dr. Clyde Muse has a history of maintaining, enforcing, and/or authorizing unconstitutional Student Freedom of Speech and discipline Policies at the Hinds Community College Campuses which imputes Actual and/or *via* Constructive Notice to the Defendants Hinds CC and the Mississippi Department of Education that these unconstitutional practices or customs at the School would ingeniously result in violations to those enrolled as College Participants First Amendment Right to Freedom of Speech while on the Hinds Community College Campuses." The Supreme Court has held frequently that language cannot be prohibited simply because it is vulgar or indecent. See, e.g., Cohen v. California, 403 U.S. 15 (1971), where the U.S. Supreme Court overturned a conviction of an man who wore a jacket bearing the words "F*** the Draft" into a county courthouse. In holding that his expression was entitled to constitutional protection, the Court wrote that "one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual." Id. at 25. The Court reiterated this principle in the university context in Papish v. Board of Curators of the University of Missouri, 410 U.S. 667, 670 (1973), when it wrote that "the mere dissemination of ideas-no matter how offensive to good taste-on a state university campus may not be shut off in the name alone of 'conventions of decency.'" The Supreme Court also stated in Texas v. Johnson, 491 U.S. 397, 414 (1989) that "[i]f there is a bedrock Principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Factually, the Plaintiffs response that Mr. Crisler was a corrupt piece of S*** and Stupid MF before leaving his classroom on January 12th 2018 could in no way be considered

a "risk of danger" posed to the health or safety of him nor the other participants of the Radio and TV Production class, but, rather, criticism of his cynical character and verbal sexual abuse - insults towards her which would have caused any reasonable female victim of the same or like circumstance to respond in fear or anger. Bell v. Itawamba Cnty. Sch. Bd. 3 799 F.3d 379 (5th Cir. 2015). Clearly the Plaintiffs ability to concentrate on her school work in the Utica Hinds Radio and TV class were affected and her repeated efforts to complete class assignments were constantly interrupted when Mr. Timothy E. Crisler perceived her school work relationship as intimate or private with the male participants who she chose to help her complete class assignments. As a result of the Defendants Ms. Sharon Alexander and Dr. Tyrone Jackson inaction and/or inadequate response to the Title IX teacher-student sexual harassment complaint filed by Ms. Davis against Mr. Timothy E. Crisler., a hostile educational environment which not only allows but condones sexual harassment at the school persists toward this female Student and others which inteniously disregards the rights, safety and wellbeing of Students attending the Hinds Community College Campuses. Bell v. Itawamba Cnty. Sch. Bd. 3 799 F.3d 379 (5th Cir. 2015). See also, Bonnell v. Lorenzo, 241 F.3d 800, 810 (6th Cir. 2001); Bonnell, 241 F.3d at 820 (holding that a professor "may have a constitutional right to use words such as 'pussy,' 'cunt,' and 'fuck,' but he does not have a constitutional right to use them in a classroom setting where they are not germane to the subject matter").

### (The Fourth Amendment Through Section 42 U.S.C. § 1983)

{I}t provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. The described Teacher/Employee-Student Sexual harassment at the Hinds CC Campuses were reasonably foreseeable by the responsible Supervisory Defendants named in this action, in the s/he willfully disregarded the known or should have known of risk of depriving Students out of her

and/or his Fourth Amendment Right to be free from unreasonable search and seizures against her or his persons, houses, papers, and effects while attending Hinds CC. While there was not an investigation conducted into the alleged Student Conduct offenses by the Dean of Students or Utica Campus Police, all other illegal searches or seizures of the Plaintiff by issuing a trespass notice on January 23rd 2018 stating that if she would come back upon any property (ies) of Hinds than she would be in violation of the Order of Notice were clearly unreasonable under the circumstances. There was not reasonable suspicion that would have suggested that Ms. Davis had committed any of the alleged Offenses against the Schools Rules of Conduct or Policy (ies) as initially asserted by the Defendant Dean Timothy Rush on January 18th 2018 and afterwards Ms. Sharon Alexander on the part of Mr. Timothy E. Crisler, to the extent, the Plaintiff should have never been seized of her persons, houses, papers, and effects while being enrolled in School at the Utica Hinds Campus during the Spring 2018 Semester. See, e.g., Safford USD No. 1 v. Redding, _ U.S. _, 129 S. Ct. 2633 (2009) and the definition of Reasonable suspicion as follows:

> The level of knowledge required for a school search which is less than probable cause, and exists where the facts and circumstances known to a school official raise a "moderate chance" of finding evidence of wrongdoing.

### (The Fourteenth Amendment Through Section 42 U.S.C. § 1983)

{I}t provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. The described unconstitutional acts and omissions of the Defendant (s) Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education employees at the Hinds CC Campuses constitutes a willful deprivation or violation to its College Participants guarantee and/or right (s) to Procedural - Substantive Due Process *via*

the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As a result, the

Plaintiff in this action has and continues to suffer a total loss of her Substantive Due Process Right (s) under

the Due Process Clause of the Fourteenth Amendment which prohibits the deprivation of life, liberty, or

property without Due Process of Law. The Plaintiffs Right to remain in College at Hinds and to be free from

unwarranted punishment were a liberty or property interest at stake, whereas, more Procedural Protection or

Due Process were to be accorded. For example, in Fee v. Herndon, 900 F.2d 804 (5th Cir. 1990), the court stated:

"[c]orporal punishment in public schools is a deprivation of substantive due process when it is arbitrary,

capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere [conducive] to

learning." Thus, the unfair procedures with regard to the false student Conduct charges against the Plaintiff

were willful on the part of the Defendant (s) Dean Timothy Rush, Ms. Sharon Alexander, Dr. Tyrone Jackson

and John Does 1-20 as the other Members of the Local Disciplinary Committee who with willfulness or

wantonness failed to comply with the Substatiative and Procedural Due Process components of the Fourteenth

Amendment which were required to safeguard and/or protect those interest (s) as implicated therein.

Ingraham v. Wright, 430 w-2.S. 651, 672 (1977). As set forth above, the Plaintiffs right to a fair and impartial

hearing before the Local Student Conduct Disciplinary Committee were also deliberately violated by the

Defendants Dean Timothy Rush, Dr. Tyrone Jackson and Ms. Sharon Alexander as to ignore the Title IX

Complaints enforcement and find Mr. Timothy E. Crisler not guilty and/or at no fault of sexual misconduct

creating a hostile school environment at the school under the investigations process involved with Title IX of

the Education Amendments Act of 1972 as set forth in *Exhibit "K"* attached hereto. These unconstitutional

acts and omissions by the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education

employees were known and/or should have been known of, to the extent, intentional discrimination and/or

segregation between Students attending the Hinds CC Campuses by the Defendant Hinds Community College upon the basis of race is what deprived the Plaintiff and other female Students of the Utica Branch out of Equal Protection of the Law *via* the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plessy v. Ferguson, 163 U.S. 537. Under that doctrine, equality of treatment is accorded when the races are provided substantially equal facilities, even though these facilities be separate. These unlawful and discriminatory acts of the Defendant (s) Hinds Community College, Dr. Clyde Muse and the Mississippi Department of Education toward the race of Students attending the Utica Campus, et al., are not equal because it does not provide equal educational opportunities for all Students attending the Hinds Community College Campuses. The population of Students that has been generally known to attend the Utica Hinds are higher in African American than any other Hinds Community College Campus within the State of Mississippi. Since 1982, Hinds Community College in Utica has ultimately remained an all-Black College which give rise to the specific causes of action cited in the case of Brown v. Board of Education (1954) and its progeny. Notably, Ms. Sharon Alexander's multiple roles at the Hinds CC as the Leading Deputy Title IX Coordinator and Student Conduct – Development person does not accord Students at the College a fair, impartial and independent investigation of Title IX complaints made against Instructors and other employees at the school by participants at the Hinds Community College Campuses. The Defendant Dr. Tyrone Jackson multiple role at the Utica Hinds CC as a Title IX Coordinator and District Dean of Students on the dates in question also affected the outcome of the Title IX sexual harassment complaint filed by Ms. Davis against Mr. Timothy Crisler on January 12th 2018 / January 18th 2018. The Defendant (s) Dr. Tyrone Jackson, Mr. Timothy Rush, Mr. Timothy E. Crisler, Ms. Sharon Alexander, Officer Percy Terrell and John Does 1-20 as Members of the Local Disciplinary Student Conduct Committee knew or should have known that the Plaintiff had a right to be free from sexual

harassment at the school, right to an unbiased investigation – processing of the Title IX sexual harassment Complaint and neutral hearing body assigned to decide the false Student Conduct Disciplinary charges as implicated by the Fourteenth Amendment and the Hind Community Colleges Student Due Process Brochure, to the extent, this female Student wouldn't have been sexually harassed and wrongfully expelled from Hinds Community College had these employees been reasonably trained, supervised and disciplined as what acts or omissions of Campus Instructor and other employees constitute sexual harassment toward Students and violates her and/or his Procedural- Substantive Due Process Right (s) at the College Campuses. During, the false Student Conduct hearing before the Local Disciplinary Committee on January 29th 2018, Ms. Sharon Alexander advised Mr. Crisler on what to do and became an advisor and/or advocate for him, by assisting him in writing or preparing false student reports or statements of the other participants that were present in the Radio and TV Production class during a response made by Ms. Davis to the Instructors severe sexual harassment or abuse during the Spring 2018 Semester. These unconstitutional acts of the Defendants Dr. Tyrone Jackson and Ms. Sharon Alexander as the Colleges Title IX Coordinators were motivated with a discriminatory gender oriented bias toward the Plaintiff who were arbitrarily accused of Student Misconduct through the Campus Dean of Students or Mr. Timothy E. Crisler as retaliation – who wrongfully invoked the Schools grievance procedures in a manner that would erode this female students right to Substatiative – Procedural Due Process of Law, and avoid the Title IX Complaint by using false student reports to present the Plaintiff as a danger and arbitrarily find her guilty of codes of conduct violations that would ultimately expel her from the College and deprive her out of the equal rights, privileges, immunities or educational benefits offered at the Hinds Campuses. The unwanted sexual harassment of the Radio and TV Broadcasting Instructor at the Utica Hinds Campus affected the performance and participation of this female student in class to

complete assignments, where occasional interaction with class mates or other students in the course would occur but perceived to be intimate and/or private in nature by Mr. Timothy E. Crisler due to his own intimate or sexual interest in the Plaintiff. This not only resulted in verbal insults and humiliation as retaliation by the Utica Hinds Campus Radio and TV Broadcasting Instructor towards Ms. Davis in front of the class, out of spite, lust, hate and/or jealousy stemming from his own desire (s) for sexuality and/or love in this female Student, but a detrimental effect or impairment upon the Plaintiffs ability to continue her educational need or goal at Hind or any other College of her choice due to a lack of good moral standing being altered or destroyed (i.e., being found in her educational background as a result of the arbitrary decision of the Local Disciplinary Committee which expelled her from attending Hinds Community College based upon the false and/or fraudulent Student Conduct or Disciplinary Charges) and other Proceedings in this action. The Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education knew that the Utica Branch and other Hinds Community College Campuses of equal Education facilities were operating on a segregated basis and did not provide Equal Protection for all of its College participants enrolled in school at Hinds. The Defendants Ms. Sharon Alexander and John Does 1-20 as the other Members of the Local Disciplinary Committee also committed reversible error when it entered the false student-witness reports into evidence though it were contradicted by the video evidence of record so adequate as to render a finding of not guilty of violating any of the Colleges Codes of Students Conduct on the part of Ms. Davis. It is a Students Fourteenth Amendment right to go before a neutral, unbiased and/or impartial School Hearing Disciplinary Panel or Administrative Body, to the extent, that the Hinds CC Title IX Coordinators also having oversight over Student Conduct Disciplinary Proceedings., gave rise to a predetermined decision of guilt toward the false student Conduct charges brought by the Defendants Dean Timothy Rush, Ms. Sharon Alexander allegedly on behalf of Mr.

61

Timothy E. Crisler which affected the outcome of the Proceedings before Disciplinary / Appeals Committee on January 29th 2018. The Defendant (s) Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education had actual and/or *via* constructive knowledge that the Hinds Community Colleges Title IX Coordinators unconstitutional employee multiple duty or hiring policies, practices and procedures created a heightened risk of teacher-student sexual harassment at the School or a conflict of interest at the Hinds Community College Campuses due to interest in the outcome of the proceedings. Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998). To the extent, a conflict of interest arisen when the Defendant Ms. Sharon Alexander participated in the Title IX sexual harassment Complaints investigation process along with Dr. Tyrone Jackson at the school which callousousy, recklessly and/or willfully disregarded the safety, well-being and right (s) of this female Student and others while on the Hinds Community College Campuses. Estate of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982, 995 (5th Cir. 2014) (quoting Davis, 526 U.S. at 650). Thus, both of these Defendants as the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education Title IX Coordinators knowingly acted with deliberate indifference to the obvious need to take remedial measures or actions to abate the risk of harm or danger posed to female students safety., wellbeing, educational rights or opportunities at the school as a result of the described egregious sexual misconduct or abuse of the Utica Hinds Campus Instructor and other employees which stems from her and/or his multi duties or roles at the College. These careless acts or omissions of the responsible supervisory Defendants named in this action constitutes a pattern or practice of procedurally flawed, tainted, biased and/or discriminatory investigations of Title IX teacher-student sexual harassment complaints at the Hinds Community College Campuses. This malfeasance of the Defendant Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education were outrageous with an extreme in degree as to not maintain strict adherence or compliance with

Title IX as a recipient of federal financial assistance or to preserve and promote the integrity of the Title IX Complaints investigation process by the College Title IX Coordinators which caused the Plaintiff and other female Students to suffer inevitable and irreparable harm or injury. Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998). The Defendants Dr. Tyrone Jackson and Ms. Sharon Alexander dual roles as the Title IX Coordinators over sexual harassment complaints and Student Conduct disciplinary proceedings willfully and wanton fully discouraged a finding of sexual misconduct on the part of the Radio and TV Production Broadcasting Instructor on the dates in question. See, e.g., 20 U.S.C. 1682 of the United States Constitution. Contrawise, the Defendant Hinds CC, the Mississippi Department of Education and Dr. Clyde Muse knowingly failed to ensure that these individual Defendants responsible for receiving, investigating, and processing student complaints of sex-based harassment or assault under Title IX did not have any actual or perceived conflict of interest or bias or prejudice toward reporting students of sexual harassment. The aforementioned constitutional harms and other damages would have not occurred had these employees of Hinds CC been reasonably trained, supervised and disciplined by Defendant Hinds Community College, the Mississippi Department of Education and Dr. Clyde Muse as to prevent violations of Students Procedural and Substantive Due Process Rights *via* the Due Process Clause of the Fourteenth Amendment while being enrolled at Hinds. See, e.g., HINDS COMMUNITY COLLEGE DISTRICT v. MUSE., Supreme Court of Mississippi Cause No. 97-CA-00606-SCT., Decided: December 17, 1998 where the Defendant Dr. Clyde Muse were sued by the State of Mississippi for violating the Ethics in Government Act of 1978 or Conflict of Interest Laws. Nevertheless, the herein named Defendants infliction of Corporal Punishment upon the Plaintiff and other Students at the School who make complaints of Teacher-Student sexual harassment under Title IX., willfully deprives her or him out of substantive due process to continue her and/or his Education goal or need at

Hinds.12  It is not only arbitrary, capricious, and wholly unrelated to the legitimate state goal of maintaining

an atmosphere conducive to learning, but takes away certain vested liberty-property interest rights granted

to College participants as implicated by the Due Process Clause of the Fourteenth Amendment to continue

her and/or his education at Hinds. 'See, e.g., Jefferson v. Ysleta Independent School District, 817 F.2d 303 (5th

Cir. 1987). In *Ysleta Independent School District,* the Court reasoned that *Taylor* was an easy case and stated

as follows:

> If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddling's,
> then surely the Constitution protects a schoolchild from physical sexual abuse-here, sexually fondling
> a fifteen-year old [sic] school girl and statutory rape-by a public schoolteacher. Stroud's sexual abuse
> of Jane Doe ... is not contested by the defendants. Thus, Jane Doe clearly was deprived of a liberty
> interest recognized under the substantive due process component of the Fourteenth Amendment.

## (III)
## COUNT THREE: DEFAMATION OF CHARACTER
## DEFAMATION *PER SE* LIBEL AND SLANDER CLAIM (S)

The Plaintiff re-incorporates paragraphs 1 through 5 (II) above by reference and reasserts the same as

if republished here., except the Defendant, Dr. Tyrone Jackson, Dean Timothy Rush, Ms. Sharon Alexander, Mr.

Timothy Crisler and John Does 1-20 as the Local Disciplinary Committee knowingly instituted, authorized and

enforced false student conduct disciplinary charges or proceedings toward Ms. Davis that were defamatory in

nature (*i.e.,* a reckless disregard for the truth and/or accuracy of the same), with actual malice and is personally

liable on a *per se* basis. The Defendant Dean Timothy Rush on January 18th 2018 falsely accused the Plaintiff

of Student Misconduct and posing a risk of harm or danger to herself and others while being a Student at

Hinds with the willful intent to deprive this female Student and others at the College out of vested liberty –

---

12  A person who has been admitted to a public university has a protected property interest in continuing his education at that
university until s/he has completed her and/or his course of study. The state cannot deprive a person of that interest without
due process. Jefferson v. Ysleta Independent School District, 817 F.2d 303 (5th Cir. 1987).

property rights and ones right to bodily integrity as secured by the Due Process Clause of the Fourteenth

Amendment. Jefferson v. Ysleta Independent School District, 817 F.2d 303 (5th Cir. 1987). Summarily, the

Plaintiff removed herself from the Radio and TV Production classroom on January 12th 2018 and did not have

to be removed by any Campus Security or Police Officers of the Utica Hinds Campus. It was after Ms. Davis

appeared back at school on January 18th 2018, when she was approached by Officer Percy Terrell who stated

that she was not allowed back in Mr. Crisler's class. The Plaintiffs response was that she was going nowhere

near his class and were prepared to change her Major. Further, this Campus Policeman stated that Dean

Timothy Rush wanted to see the Plaintiff in his office of when and where he insisted that the Plaintiff would

have to attend a counseling class and several others before being allowed to change the Radio and TV

Production program that the classroom of Mr. Crisler offered to Entertainment. On the same, Dean Timothy

Rush inquired into the sexual harassment complaint made by Ms. Davis against Mr. Timothy E. Crisler by

repeatedly asking whether or not Ms. Davis claimed that the Radio and TV Production Instructor sexually

harassed her. The Defendant (s) Dean Timothy Rush, Timothy E. Crisler, and Ms. Sharon Alexander intentional

use of false witness statements or reports during the false Student Conduct hearing proceeding were not only

used to present Ms. Davis as a danger, but to intentionally ignore the Title IX sexual harassment Complaint

filed by her against Mr. Timothy E. Crisler and arbitrarily expel her attendance from the College. These

Defendants publications were presumptively injurious causing Ms. Davis to suffer pecuniary injury,

humiliation-embarrassment, a loss of good reputation in the Community in which she reside, a total loss of

good moral standing in her educational background or history and a deprivation of her Substantive -

Procedural Due Process Rights (although no such showing is required due to the *per se* nature of the

defamation) giving rise to punitive damages in this cause of action. For example, in Fulton v. Mississippi

Publishers Corp., 498 So.2d 1215, 1216 (1986), the Mississippi Supreme Court held that:

> Any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community is actionable *per se*. Fulton, 498 So. 2d at 1217. See also, e.g., Miss. Const. Art. 3, § 13, (1890) where the truth is a defense).

All of the herein named Defendants publications of written statements and video recording surrounding the Plaintiffs response to the severe-pervasive sexual harassment endured by her while being a Student in the Radio and TV Broadcasting classroom of Mr. Timothy E. Crisler are continuing, to the extent, Ms. Davis did not know, or could not within a reasonable time after exercising due diligence discovered all of the other willful acts or omissions of the Defendants Dr. Tyrone Jackson, Mr. Timothy Rush, Mr. Timothy E. Crisler, Ms. Sharon Alexander and John Does 1-20 due to the secretive or inherently undiscoverable nature of the publications which are relevant to this cause of action. See e.g., Kittinger v. Boeing Co., 21 Wash. App. 484, 585 P.2d 812 (1978) and Staheli v. Smith, 548 So. 2d 1299 (1989). Notably, during the time of the events giving rise to this cause of action, the Plaintiff were also wrongfully accused of making the statement in the Radio and TV Production class to make its participants feel sorry for her which are not true and defamatory in nature, to the extent, the video of the incident on January 12th 2018 are yet being played at the Utica Hinds Community College Campus by the Radio and TV Broadcasting Instructor and the Dean of Students (Timothy Rush) as humiliation-retaliation which continues to subject this female student to severe embarrassment, humiliation and a loss of her good reputation in the Community in which she reside. The U.S. Supreme Court has held that in order to recover punitive damages that a Plaintiff must prove that the Defendant acted with "knowledge of falsity or reckless disregard for the truth." Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974). Accordingly, "Malice" is defined as: (a) A specific intent . . . to cause substantial injury to a Plaintiff; or (b) An act or omission by [the Defendant], (c) Which when viewed objectively from the standpoint of [the Defendant]

66

at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; (d) of which [the Defendant] has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. In other words, "malice" was defined to require intent to cause injury or conscious indifference of the risk. Black's Law Dictionary 862 (5th ed. 1979). Malice is usually shown by circumstantial evidence and may be inferred from the fact that a Defendant may have acted with reckless disregard for a Plaintiff's rights. Strong v. Nicholson, 580 So.2d 1288, 1293(Miss. 1991). At times, "actual malice" may evidence traditional malice. See, e.g., Bentley v. Bunton, 94 S.W.3d 561, 604–05 (Tex. 2002) ("[B]ecause the Defendants acted with actual malice, Bentley is entitled to punitive damages without proving that the Defendants were personally vindictive toward him . . . ."); Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d 369, 374–75 (Tex. 1984) (holding that evidence of disregard of blatant untruth and gratuitous spreading of the untruth were circumstantial evidence of malice).

### (IV)
### COUNT FOUR: STATE LAW NEGLIGENT HIRING, RETENTION AND SUPERVISION CLAIMS OF MR. TIMOTHY E. CRISLER, ET AL., UNDER THE MISSISSIPI TORT CLAIMS ACT OR GENERAL LIABILITY POLICY OF HINDS CC

The Plaintiff re-incorporates paragraphs 1 through 5 (III) above by reference and reasserts the same as if republished here., except that the aforementioned described sexual misconduct of Mr. Timothy E. Crisler were reasonably foreseeable by the Defendant Hinds Community College, the Mississippi Department of Education and Dr. Clyde Muse out of a direct or proximate result of her and/or his negligent hiring, retention and supervision of Mr. Timothy E. Crisler as the Radio and TV Broadcasting College Instructor of the Utica Hinds CC Campus. See, e.g., Restatement (Second) of Torts; Glover ex rel. Glover v. Jackson State University, 968 So. 2d 1267, 1276 (¶29) (Miss. 2007) and Canutillo Independent School District v. National Union Fire Ins.

Co., 99 F.3d 695, 705 (5th Cir. 1996) (finding that negligent supervision claim would not exist without damage caused by sexual abuse). The Defendant (s) Hinds Community College, the Mississippi Department of Education and Dr. Clyde Muse willfully breached a duty of ordinary care owed to participants of the Hinds CC Campuses to hire and retain reasonably safe employees at this Public Learning Institution. Id. Contrawise, to reasonably supervise teacher-student sexual harassment at the school which directly and/or proximately caused the injury and resulting damages to Plaintiff. See, e.g., RESTATEMENT (SECOND) OF AGENCY § 219 (1958)., Sections § 228-237 which define when a servant's torts are within the scope of her and/or his employment. Id. at § 228-37. The foregoing acts of Defendants constitute negligent hiring, training and supervision as these Defendant's breached their (ies) duty to hire reasonably safe Instructors and other employees as qualified person (s) to perform her and/or his work duties of assignments with the College in ordinary care that were owed to the Plaintiff and other Students of Hinds Community College Campuses. See, e.g., Doe ex rel. Doe v. Wright Security Services, Inc., 950 So. 2d 1076, 1086 (¶43) (Miss. Ct. App. 2007) reversed a grant of summary judgment in favor of a security service in a student's action involving her being sexually assaulted by another student. The Mississippi Court of Appeals found summary judgment inappropriate because the security service had contracted with the student's school district to provide security services and had obligated itself to a duty to protect the student. Id. at 1080 (¶15). Further, the Mississippi Court of Appeals found that public schools had the statutory duty to minimize the risks to students and to provide a safe environment. Id. See also Doe v. Covington Cnty. Sch. Dist., 675 F.3d 849 (5th Cir. 2012). The Defendants Dr. Tyrone Jackson and Ms. Sharon Alexander's egregiousness acts or omissions of Mr. Timothy E. Crisler willfully and wanton fully created a dangerous or unsafe learning environment for members of one sex while being a student at Hinds. See, e.g., Doe ex rel. Brown v. Pontotoc County School District, 957 So. 2d

410, 422 (¶31) (Miss. Ct. App.2007) and Beacham v. City of Starkville School System, 984 So. 2d 1073, 1076

(¶13) (Miss. Ct. App. 2008). The injuries and damages to Ms. Davis would have not occurred had the

Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education took reasonable measures

to abate the known or should have known of risk of harm posed to students by employing unsafe Instructors

and other staff at the Hinds CC Campuses. See, e.g., Davis v. Christian Bhd. Homes of Jackson, Miss., Inc., 957

So. 2d 390, 404 (¶32) (Miss. Ct. App. 2007). The Defendant Timothy Crislers sexual misconduct toward female

students were reasonably foreseeable, to the extent, his job duties or assignments would require participants

of the Radio and TV Production class to go on long distance trips-stays along with him and the male students

of his class to complete class assignments and others to earn points in the Radio and TV Production Program.

The Supreme Court found that "public schools have the responsibility to use ordinary care and take reasonable

steps to minimize risks to students thereby providing a safe school environment." Id. The supreme court

applied this ordinary-care standard under Section § 11-46-9(1)(b) that requires ordinary care in the

performance of a statutory duty. Id. at 1141-42(¶25). The statutory duty applied to public schools was

Mississippi Code Annotated Section § 37-9-69, which states:

> It shall be the duty of each superintendent, principal and teacher in the public schools of this state to
> enforce in the schools the courses of study prescribed by law or by the state board of education, to
> comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes,
> rules and regulations prescribed for the operation of schools. Such superintendents, principals and
> teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and
> from school, on the playgrounds, and during recess.

## 6.
## (JURY TRIAL DEMAND)

Plaintiff re-incorporates paragraphs 1 through 5 (IV) above by reference and reasserts the same as if

republished here. Furthermore, Ms. Davis asserts her right under the Seventh Amendment to the United States

Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all of the

issues, if any, are arising herein. Elizabeth Doe v. Baylor University, No. 6:17-CV-27 (W.D. Tex.).

### 7.
### SPECIFIC DAMAGES & LIABILITY
### OF THE DEFENDANTS

The Plaintiff re-incorporates paragraphs 1 through 6 above by reference and reasserts the same as if

republished here., except the aforementioned described unconstitutional acts or omission of all of the herein

named Defendants, caused Ms. Davis to suffer constitutional injuries and damages, extreme emotional

distress, a loss of good standing or reputation in the Community in which she resided at the time of this

incident, and a total loss of educational opportunities. See, e.g., Davis v. Monroe County Board. of Education,

526 U.S. 629 (1999) at Davis, 526 U.S. at 650-51 (using, as an example of qualifying misconduct, deliberate

indifference to "overt, physical deprivation of access to school resources," such as "a case in which male

students physically threaten their female peers every day, successfully preventing the female students from

using a particular school resource"); Id. at 652-53 (requiring that the "behavior be serious enough to have the

systemic effect of denying the victim equal access to an educational program or activity" and be "played out

on a 'wide-spread level' among students"). The Defendants Hinds CC, Dr. Clyde Muse, the Mississippi

Department of Education, Dr. Tyrone Jackson, Mr. Timothy Rush, Mr. Timothy E. Crisler, Ms. Sharon Alexander

and John Does 1-20 are liable for the injury and damages cited to in this complaint and incurred to Ms. Davis

while being a Student at the Utica Hinds CC Campus giving rise to punitive damages as her and/or his tortious

acts or omissions were reckless, intentional and thus heedless as to avoid the wanton infliction of

constitutional harms and all other said damages inflicted upon the Plaintiff. See, e.g., Section § 11-1-65 (1) (a)

of the Mississippi Code of 1972 and Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex.1993) where the District

Court held that in order to be extreme and outrageous conduct must be "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." As a result, Ms. Davis is entitled to Monetary, Declaratory and

Equitable or Injunctive Relief under Title IX of the Education Amendments Act of 1972, Section (s) 20 U. S. C.

§1681- § 88 and 42 U.S.C. § 1983 for all of the damages mentioned herein against the Defendants Hinds CC,

Dr. Clyde Muse, the Mississippi Department of Education, Dr. Tyrone Jackson, Mr. Timothy Rush, Mr. Timothy

E. Crisler, Ms. Sharon Alexander and John Does 1-20. See Department of Education, Office for Civil Rights,

Sexual Harassment Guidance, 62 Fed. Reg. 12,034, 12,039 (1997). Including an permanent injunction against

the Defendants Hinds Community College and the Mississippi Department of Education as to prevent future

violations to a reporting Students Constitutional rights or guarantees in the process of investigating and

adjudicating teacher-students sexual harassment complaints under Title IX, such as this Plaintiff that only

heightened the risk of a hostile school environment at the Hind Community College Campuses and to provide

adequate or sufficient training, supervision and discipline of its employees subjective knowledge or awareness

of sexual harassment toward Students through constitutional policies, practices or procedures adopted by the

school and its Title IX Coordinators after attaining the same as to what acts or omissions of the School

employees constitute sexual harassment, abuse or assault toward a Student. Contrawise, the Plaintiff also

seeks monetary damages against the Defendants Hinds CC, Dr. Clyde Muse, the Mississippi Department of

Education, Dr. Tyrone Jackson, Dean Timothy Rush, Mr. Timothy E. Crisler, Officer Percy Terrell; Ms. Sharon

Alexander and John Does 1-20 as the other Members of the Local Disciplinary / Appeals Committee in their

individual capacities under the *Ex Parte Young* exception of Section 42 U. S. C. § 1983 of the United States

Constitution., including punitive wherever appropriate**13** in a amount to be determined by the Court or Jury without limitation, damages to physical well-being, intentional infliction of emotional distress, damages to reputation, economic losses, loss of educational opportunities and good moral standing in her educational history, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements incurred in this action agianst all of the herein named Defendants (Sic....past, present and future). For example, in Doe v. Claiborne, 103 F.3d 495 (6th Cir. 1996), the Sixth Circuit held:

> {T}hat a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. Further that the substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school...and this conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.

The Defendants Hinds CC, Dr. Clyde Muse, the Mississippi Department of Education and the Hinds Community College Title IX Coordinators as Dr. Tyrone Jackson and Ms. Sharon Alexander on the dates in question, before and after:

(1) after having actual or via constructive notice of a pattern or practice of inappropriate sexual behavior by Instructors and other employees of the Utica Hinds CC Campuses pointing plainly toward the conclusion that is faculty and staff was sexually harassing or abusing female students;

(2) acted with deliberate indifference toward the constitutional rights of this female student and others by failing to take corrective or remedial action that were so obviously or necessary as to prevent the sexual harassment or abuse of its participants creating a hostile school environment not conductive of learning by some of its College Instructors and other Staff; whereas

(3) such careless or reckless acts or omissions of these Defendants caused the aforementioned constitutional injury (ies) and other damages to the Plaintiff and other victims of the severe, pervasive and persistent sexual harassment or abuse existing at the Hinds Community College Campuses. Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994). See also, Title IX of the Education

---

13 The Due Process Clause of the Fourteenth Amendment *via* Section 42 U. S. C. § 1981 of the Civil Rights Act of 1964 are applicable to the Defendant Hinds Community College c/o Attorney General Jim Hood for the State of Mississippi which prohibits unequal application of voter registration requirements, and racial segregation in schools, employment, and public accommodations. See, e.g., Brown v. Board of Education (1954) and Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir. 1994).

Amendments of 1972, Section (s), 20 U. S. C. §1681- § 88 and Section 42 U.S.C. § 1983 of the United States Constitution., et seq.

## 8.
### PRAYER FOR RELIEF - GENERAL RELIEF (S) REQUESTED
### (Monetary, Declaratory And Injunctive)

**WHEREFORE PREMISES CONSIDERED**, the Plaintiff re-incorporates paragraphs 1 through 7

as if the same has been republished here and respectfully Request this Court to:

**(1).** Declare that the Defendants Hinds Community College, the Mississippi Department of

Education and Dr. Clyde Muse as a recipient of federal financial assistance has discriminated against

Students on the basis of sex at the HCC Campuses under Title IX by failing to address, prevent and

remedy, sexual harassment, and in doing so failed to provide the equal benefits, activities or services

to the Plaintiff and other Students of the Utica Hinds Community College Campus, et al., in violation

of Title IX of the Education Amendments of 1972, Section (s), 20 U. S. C. §1681- § 88 and the Equal

Protection Clause of the Fourteenth Amendment through Section 42 U.S.C. § 1983, et seq. At all times

relevant to this Complaint, the Defendant Hinds Community College, the Mississippi Department of

Education and Dr. Clyde Muse did not have reasonably trained, supervised and disciplined Title IX

coordinators as to protect participants ofthe Hinds Community College Campuses Procedural and

Substantive Due Process Rights *via* the Due Process Clause of the Fourteenth Amendment that was

known or should have been known of by these responsible authorities of the school which also give

rise to Monetary, Injunctive and Declaratory Relief (s) under Section 42 U. S. C. § 1983 of the United States Constitution, et seq.

**(2).** Declare the Colleges intentional discrimination toward Students under Title IX of the Education Amendments of 1972, Section (s), 20 U. S. C. §1681- § 88 by the Defendants Dean Timothy Rush, Dr. Tyrone Jackson, Ms. Sharon Alexander and John Does 1-20 as the other Members of the Local Disciplinary Committee toward the sex, of Students, as a recipient of Federal Financial Assistance under 42 U.S.C. 2000 (d), et seq., unconstitutional, arbitrary or capricious under Section 5 U.S.C. § 706 (2) (A) of the Administrative Procedures Act, contrary to a constitutional right, power, privilege or immunity under Section 5 U. S. C. § 706 (2) (B) of the Administrative Procedures Act, substantively and/or procedurally unlawful, and far exceeds their statutory jurisdiction, limitation's or authority under Section 5 U. S. C. § 706 (2) (B-C) of the Administrative Procedures Act or taken without observance of procedures required by law under Section 5 U. S. C. § 706 (2) (D) of the Administrative Procedures Act. See, e.g., U.S. v. Crew, 916 F.2d 980, 984 (5th Cir. 1990) (citing Washington v. Davis, 426 U.S. 229 (1976), and Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977).

**(3).** To permanently enjoin the Defendants Hinds Community College, the Mississippi Department of Education, Dr. Clyde Muse and all other officers, agents, employees, successors, assigns or persons in active concert or participation with the Colleges unlawful discrimination and retaliation against Students reports of teacher-student sexual harassment under Title IX., in direct violation of the First, Fourth, and Fourteenth Amendment through Section 42 U.S.C § 1983 of the United States Constitution and the Education Amendments Act of 1972, Section (s) 20 U.S.C. § 1681-

74

88. The Plaintiff was subjected to a hostile education environment created by the aforementioned Defendant's lack of adequate Title IX investigation policies and procedures, to the extent, the willful or wanton failure to investigate and/or address the Hinds Community Colleges teacher-student sexual harassment endured by the Plaintiff under Title IX and the subsequent harassment by its employees toward Students directly and/or proximately deprived the Plaintiff and other female Students at the College out of equal access to educational opportunities or benefits provided by Hinds. Precipitously, the Defendants Title IX Coordinators investigation processes of teacher-student sexual harassment were wholly inadequate to consistently provide a prompt and equitable response under Title IX." The Defendant Mr. Timothy E. Crisler" did not undergo any [administrative] hearing or disciplinary proceeding in blight of the sexual harassment complaint filed against him by the Plaintiff which evince no corrective action to identify and, as needed, to eliminate a hostile school environment existence for the safety and wellbeing of Ms. Davis and other female students attending the Utica Hinds Community College Campus. The Defendants Hinds Community College, the Mississippi Department of Education, and Dr. Clyde Muse knowingly failed to take immediate, effective remedial steps to resolve complaints of sexual harassment, and instead acted with deliberate indifference towards the Plaintiff and other female Students of the Utica Hinds CC Campus pursuant Section (s), 20 U. S. C. §1681- § 88 and Section 42 U.S.C § 1983 of the Education Amendments Act by employing reasonably trained, supervised and disciplined Title IX Coordinators. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of

the complainant," but must also "accord Due Process to both parties involved." The Defendants Dean Timothy Rush, Officer Percy Terrell, Ms. Sharon Alexander and John Does 1-20 created an environment where an reporting student of teacher-student sexual harassment are accused of Student Misconduct and is fundamentally denied Due Process of law by arbitrarily being prosecuted and persecuted through unconstitutional Student Conduct Policies or Procedures Under 42 U.S.C § 1983 that are out of an direct or proximate cause of the Colleges negligent hiring, training, supervision and discipline policies of its Title IX Coordinators and other employees at the school arising under the Education Amendments Act of 1972, Section (s), 20 U. S. C. §1681- § 88 and other Constitutional or Applicable Common Law (s) within the State of Mississippi. This unconstitutional acts of the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education has failed to address sexual harassment of students at the Hinds Community College Campuses and actively conceal sexual harassment or violence committed by its faculty and other staff employed at the school for years. The unconstitutional multi duty hiring policies of these Defendants has allowed the Hinds Community College Title IX Coordinators to "conduct her or his own untrained internal inquiries of reporting students Title IX sexual harassment complaints, outside of the Schools Policy (ies), if any, which improperly discredited and retaliated against complainants by denying ones right to a fair, impartial, and informed investigation during the investigative process of Title IX investigation Complaints made by Student against the College Campus Instructors."

76

**(4).** The Plaintiff also seeks a mandatory injunction ordering the aforementioned Defendants to refrain from unlawful discrimination and/or retaliation against this reporting Student and others in the future, ordering the Defendant to undertake and rectify any and all Title IX violations and/or inequities, ordering the Defendants Hinds Community College, the Mississippi Department of Education, Dr. Clyde Muse and all other officers, agents, employees, successors, assigns or persons to refrain from creating and condoning sexual harassment and/or discrimination creating a hostile environment against individuals on the basis of sex by immediately ceasing deliberate indifference to sexual harassment, abuse, assault or violence at the College; and ceasing the willful or wanton interference with the Title IX disciplinary-investigation process by instituting or allowing false disciplinary charges to be instituted against Students as victims of sexual harassment or abuse by some of its employees at the Hinds Campuses as to act in favor of the College Instructors who engage in sexual harassment or find her or him at no fault of guilt toward College Participants and to cease from failing to properly hire, train and retain Title IX Coordinators and other faculty as to proper methods to deal with reports of sexual harassment under Title IX, investigate the same and accommodate victims of teacher-student sexual harassment in a manner that would permit and/or allow her or him without undue hindrance or interference to complete their Education goal (s) or need (s) at Hinds Community College.

**(5).** To enter an immediate declaratory and a mandatory injunction requiring the Defendants Dr. Clyde Muse, the HCC's Board of Trustees or the Mississippi Department of Education's

Superintendent to vacate, rescind, reverse and/or negate to be invalid or an abuse of discretion., the arbitrary, capricious or fanciful decision of the Dean Timothy Rush, Dr. Tyrone Jackson, Ms. Sharon Alexander and John Does 1-20 as the other Members of the Local Disciplinary Committee on January 29th 2018 to expel Ms. Davis from attending school at the Hinds Community College Campuses. The decision of entered by the Local Discplinary / Appeals Committee on the same are not based upon substantial or a preponderance of the evidence., has no legitimate state goal of maintaining a school atmosphere conducting of learning and is procedurally flawed, tainted or biased. See El-Bawab v. Jackson State Univ., No. 3:15-CV-733-DPJ-FKB, 2018 WL 543040, at *3 (S.D. Miss. Jan. 24, 2018) (finding former University president was "the only individual defendant who ever had authority to grant the prospective relief" plaintiff sought—"an immediate promotion to full professor"). There is sufficient evidence existing in this case that would tend to suggest that the Plaintiff were wrongfully expelled from Hinds Community College on January 29th 2018 making judicial review by this Court under Section (s) 5 U. S. C. § 500 - § 706 of the Administrative Procedures Act, and the *Ex parte Young* exception to Eleventh Amendment under Section 42 U.S.C. § 1983 appropriate. The Title IX investigation process by the Defendants Ms. Sharon Alexander and Dr. Tyrone Jackson were carried out in favor of Mr. Timothy Crisler, to the extent, the false Student Conduct Disciplinary charges instituted by Dean Timothy Rush, Officer Percy Terrell or Mr. Crisler were clearly unsubstantiated and willfully disregarded the rights of this female Students under the Title IX as the Defendant Mr. Timothy E. Crisler sexual harassment we so sufficiently severe, shocking, pervasive, and objectively

offensive as to cause any reasonable victim of the sexist verbal abuse to respond in fear or anger. The Defendants Dr. Tyrone Jackson and Ms. Sharon Alexander had a duty to respond to the sexual harassment of the Utica Hinds Radio and TV Broadcasting Instructor toward the Plaintiff after having actual knowledge of his non-school related sexist remarks and misconduct in anticipation that his relationship with the Plaintiff would become private causing Ms. Davis to experience a hostile environment during her attendance with Hinds within the 2018 Spring Semester. Therefore, the Defendants Hinds CC, Dr. Clyde Muse and the Mississippi Department of Education maintained an official policy of the College Campuses Title IX Coordinators not investigating reports of Title IX sexual harassment and acted with deliberate indifference to the known risk of allowing a sexually offensive and hostile school environment to exist at the School. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648 (1999). See also, 42 U.S.C § 1983 of the United States Constitution.

**(6).** The Plaintiff also seeks mandatory injunctive relief that requires all Title IX Complaints of sexual harassment, sexual discrimination, and retaliation by a Student to be investigated by unbiased and disinterested Title IX Coordinators at the Hinds Community College Campuses as to protect all of its Students Substantive and Procedural Due Process rights *via* the Due Process clause of the Fourteenth Amendment to the United States Constitution (*e.g.,* the Defendant Ms. Sharon Alexander's as the Colleges Lead Title IX Coordinator and Personnel also responsible for the enforcement of Student Conduct- Development., created a conflict of interest in this action and a favoritism toward the Utica Hinds Campus Radio and TV Production Broadcasting Instructor who

engaged in unwanted Sexual harassment toward Ms. Davis that created a hostile school environment not conductive of learning on the dates in question). Further, to require the Defendants Hinds CC; the Mississippi Department of Education and Dr. Clyde Muse to change its Title IX investigation policies or procedures by immediately investigating student reports of teacher-student sexual harassment within twenty-four – Seventy two hours upon receipt of an Title IX Complaint by a student of the College and to hold a subsequent disciplinary hearing before any alleged Student Conduct or Disciplinary charges that may be instituted by an employees or Instructor the subject of an Title IX Complaint at the School could be heard or brought before a Hearing Panel or other responsible personnel assigned to hear or decide such charges at the Hinds Community College Campuses. On January 29th 2018 the Plaintiff was arbitrarily expelled from attending school at any of the Hinds Community College Campuses, resulting in a total loss of her educational goal or needs at Hinds CC. The Defendants Dr. Tyrone Jackson, Dean Timothy Rush, Ms. Sharon Alexander and Mr. Timothy E. Crisler should not be allowed to discriminate and retaliate against any student because of her and/or his report or complaints of sexual harassment, discrimination, or retaliation under Title IX of the Education Amendments Act of 1972 or the giving of testimony, assistance, or participation in any investigation or hearing proceeding at the school regarding teacher-student sexual harassment or alleged crimes of student Conduct on the part of students at Hinds Community College Campuses. The Hinds CC Title IX Coordinators and all other authorities would be appropriately trained as to what misconduct constitutes sexual harassment by its Instructors toward

students and the importance of fundamental fairness in the Title IX Complaints Investigation Process and the fundamental fairness of conduction an investigation into alleged charges of Student Misconduct. Likewise, the consequences, if any, that should be implemented for ingeniously failing to impartially or thoroughly investigate Title IX sexual harassment Complaints filed against its employees by a student or completely ignoring the same despite its occurrence and consistency with other evidence of record, by arbitrarily inflicting unwarranted "Corporal Punishment" upon its College Participants.

**(7).** To award the specific dollar amount of 10 Billion Dollars (Ten Billion Dollars) in compensatory relief for the constitutional injuries and other harms or damages cited to in this complaint and all costs or Attorney Fees incurred in this civil action under the Equal Access to Justice Act., Section 28 U.S.C. § 2412 (d) of the United States Constitution.**14** The Defendants Mr. Timothy E. Rush, Ms. Sharon Alexander and John Does 1-20 as the Members of the Local Disciplinary Committee knew that Ms. Davis disputed that the cause of the incident in the Radio and TV Production class on January 12th 2018 were the result of any act or omission on her part, to the extent, the propriety of the Student Conduct disciplinary proceedings and sanctions imposed against

---

14  See, e.g., Section 28 U.S.C. § 2412 of the United States Constitution, which provide in pertinent part as follows:

   (a)

      (1) Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section § 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

her were arbitrary despite video evidence sufficient enough to support a finding of guilt or sexual

harassment on the part of Mr. Timothy Crisler on the dates in question. Summarily, the Utica Hinds

CC Radio and TV Broadcasting Instructor were never subjected to an investigation or disciplinary

proceedings under the Title IX investigation process by Dr. Jackson or Ms. Alexander as the Title IX

Coordinators of the College although one had been launched by the Plaintiff. Mr. Crisler suffered no

sanctions of any kind as to cease and/or deter future teacher-student sexual harassment of Students

at the school when the video evidence corroborated other incidents of sexual misconduct,

retaliation-humiliation toward Ms. Davis in the Radio and TV Production class by Mr. Crisler which

created a hostile school environment for female students as to support a finding of not guilty on the

part of the Plaintiff. Evidently, Ms. Davis was devastated and distraught by the sexual harassment,

retaliation-humiliation of Mr. Timothy Crisler and attempted to change the hostile school

environment and made Complaints of the same to the responsible authorities of Hinds Community

College Campuses. Ultimately, the wrongful acts complained of herein by the Utica Hinds CC Radio

and TV Broadcasting Instructor willfully or wanton fully produced embarrassment, rage, frenzy, worry,

pain and emotional anguish to the Plaintiff that would have caused any reasonable victim- female

student of the sexual abuse while in the Radio and TV Production program to feel humiliated, harmed

or raped in the like circumstance (s), as this kind of sexual torture or abuse could have a long lasting

impact on a female Students personal life and future. Several Circuit Court of Appeals has held that

rape constitutes a severe form of sexual harassment that can create a hostile educational

environment under Davis. See, e.g., Soper v. Hoben, 195 F.3d 845, 854-55 (6th Cir. 1999). Student-on-student rape can have continuing effects that create a hostile educational environment for the victim. Williams v. Bd. of Regents of the Univ. Sys. of Ga., 477 F.3d 1282, 1297-98 (11th Cir. 2007); see also Wills v. Brown Univ., 184 F.3d 20, 37 (1st Cir. 1999) ("The effect of such abusive conduct on a victim does not necessarily end with a cessation of the abusive conduct, particularly if the victim and the abuser retain the same or similar roles in an educational institution.").

**(8).** Finally, the Plaintiff respectfully requests this Court enter judgment against all of the herein named Defendant consistent with the relief stated herein, and for any and all other relief that the Plaintiff may be justly entitled to such as actual damages, nominal damages against the Defendants named in this suit, statutory interest and injunctive relief, as the Defendants Hinds CC, the Mississippi Department of Education and Dr. Clyde Muse deliberately failed to hire reasonably safe Instructors and other employees at the Hinds Community College Campuses as to not subject its College participants to teacher-student sexual harassment, violence or abuse at the School, and the Specific Compensatory Amount (s) mentioned herein for the Constitutional injuries and other emotional-physical damages cited to in this Complaint.**15**

This the 26th day of September 2019.,

Respectfully Submitted,
MS. CHAKAKHAN R. DAVIS, PLAINTIFF

By

32942 / 50 Hwy 18, Utica, MS 39175
chakakhandavis@yahoo.com

---

15 See, e.g., https://www.youtube.com/watch?v=BQ0mxQXmLsk .